IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| Label$Dollars, Corp., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-_____ |
| | ) | |
| Premark FEG L.L.C., | ) | |
| | ) | |
| Defendants. | ) | |

06 - 594

2006 SEP 25 PM 4: 25

## COMPLAINT

Plaintiff Label$Dollars, Corp. ("Label Dollars"), hereby demands a trial by jury on all issues so triable and, for its complaint against Defendant Premark FEG, LLC ("Premark"), through its attorneys, states the following:

### NATURE OF THE ACTION

1.     In this action, Label Dollars seeks a declaratory judgment that U.S. Patent No. 7,099,038 ("the '038 Patent" or "patent-in-suit") is invalid and not infringed, and in the event it is found to be valid, it is owned by Label Dollars, either solely or jointly with the defendant.

### PARTIES

2.     Label Dollars is a corporation organized and existing under the laws of the State of Delaware and maintains its principal place of business at 870 Post Road East, Westport, CT 06880. Label Dollars is a promotion company that offers manufacturers and retailers in-store redeemable coupons for supermarket, meat, deli and bakery products.  Label Dollars has conducted and is conducting business in interstate commerce and in this judicial district.

3.      On information and belief, defendant Premark FEG L.L.C. ("Premark") is a corporation organized and existing under the laws of the State of Delaware and maintains its principal place of business at 1300 Market St., Wilmington DE 19801. On information and belief, Premark has conducted and is conducting business in interstate commerce and in this judicial district. On information and belief, Premark is a patent holding company subsidiary of Illinois Tool Works, Inc. ("ITW").

## JURISDICTION AND VENUE

4.      This action arises under the Patent Laws of the United States, Title 35 of the United States Code. This Court has original jurisdiction over the parties and over the subject matter under 28 U.S.C. §§ 1331, 1338, 2201 and 2202 and under the doctrines of pendent and supplemental jurisdiction.

5.      Venue is proper in this district under 28 U.S.C. §§ 1391 (b) and (c).

## EXISTENCE OF AN ACTUAL AND JUDICIAL CONTROVERSY

6.      There is an actual controversy between the parties within the jurisdiction of this Court under 28 U.S.C. §§2201 and 2202 concerning the validity, infringement, inventorship and ownership of the '038 Patent.

## FACTS COMMON TO ALL CLAIMS

7.      On September 15, 2000, Robert J. Schuller ("Schuller") filed a patent application in the United States Patent and Trademark Office ("Patent Office") that matured into U.S. Patent No. 7,026,556 ("the '556 Patent") on April 11, 2006, entitled, "Method and System for Controlling Messages Printed by an In Store Label Printer and Related Label Structure." Schuller was and is the General Manager of Hobart Corporation ("Hobart"). On information and belief, Hobart also is a subsidiary of ITW. The '556 Patent was assigned by Schuller to Premark. The specification of the

2

'556 Patent describes the invention as "a method for selectively printing different messages on labels printed by an in-store scale [that] involves providing an in-store scale including a label printing mechanism with a supply of labels and a communications link for receiving information from a site external to the store." Column 2, lines 33-38.   Attached hereto as Exhibit A is a copy of the '556 Patent.

8.    Before May 21, 2002, Lawrence Mortimer ("Mortimer") conceived of a method and system for providing pre-point-of-sale incentive marketing with pre-printed coupons and on that date filed a provisional application with the Patent Office relating thereto.  Specifically, the system and method relates to label coupons that include a product selection information portion and one or more pre-printed coupons implementing incentive offers for selected products.   On December 24, 2002, Mortimer filed a complete application, Serial No. 10/328,928 ("the '928 Application") claiming priority on the provisional application. The '928 Application was published on November 27, 2003 under Pub. No. 2003/0218330. Mortimer has assigned his rights in the '928 Application to Label Dollars. Attached hereto as Exhibit B is a copy of the published '928 Application.

9.    In late 2002, Mortimer on behalf of his company Label Dollars approached Safeway, Inc. ("Safeway"), a large supermarket chain, inquiring about testing his system in the Safeway supermarkets.  Label Dollars could not test its system as a standalone product and needed to use weighing scales, supplied by Hobart, at the Safeway supermarkets in order to conduct its testing. As a result, Mortimer and Label Dollars contacted Schuller and Hobart and entered into a Nondisclosure Agreement with Hobart on January 28, 2003, by which Label Dollars disclosed to Hobart confidential information relating to Label Dollars' invention. Attached hereto as Exhibit C is a copy of the Nondisclosure Agreement.

10.     After learning about Label Dollars' invention, Schuller filed a continuation application on March 14, 2003 -- Serial No. 10/389,474 ("the '474 Application") -- claiming priority on the '556 Patent and adding claims having no support in the specification, but rather, purporting to cover the invention conceived by Mortimer and Label Dollars and disclosed in confidence to Schuller and Hobart. The '474 Application still is pending in the Patent Office. Schuller similarly assigned the '474 Application to Premark.

11.     On October 18, 2004, Schuller filed another continuation application, which issued as the '038 Patent. As was the case with the '474 Application, the '038 Patent claims priority on the '556 Patent and also adds claims having no support in the specification but rather claims directed to the invention conceived by Mortimer and Label Dollars and disclosed in confidence to Schuller and Hobart. Once again, Schuller assigned the '038 Patent to Premark. Attached hereto as Exhibit D is a copy of the '038 Patent.

12.     On November 18, 2004, Schuller and Premark petitioned the Patent Office to make the application of the '038 Patent "special" on the ground of an actual infringement by a system implemented in a "Dominick's" grocery store located on Dundee Road in Northbrook, Illinois. This system was a Label Dollars system. Based on statements in the petition, Premark has created in Label Dollars a reasonable apprehension that it will initiate a patent infringement suit against Label Dollars, alleging that Label Dollars infringes the patent-in-suit. Attached hereto as Exhibit E is a copy of the November 18, 2004 Petition To Make Special.

13.     An actual and justiciable controversy exists between Label Dollars and Premark as to whether the patent-in-suit is invalid and/or non-infringed and, if the patent-in-suit is determined to be valid, whether Mortimer of Label Dollars should be added as a named inventor to the patent-in-suit,

4

and/or whether Schuller of Hobart should be removed as a named inventor, and whether Label Dollars is the true owner of the patent-in-suit.

## COUNT I
### (*DECLARATORY JUDGMENT OF INVALIDITY*)

14.    Label Dollars repeats and reasserts all allegations in paragraph 1-13 above as if they are stated in full herein.

15.    Schuller is not the inventor of the subject matter claimed in the '038 Patent, but rather, derived the invention from Mortimer.

16.    The '038 Patent is invalid and void as a result of Schuller's failure to comply with one or more provisions of Title 35 of the United States Code related to patentability of an invention, including but not limited to §§ 102, 103, 112, and 132.

17.    Label Dollars is entitled to a declaratory judgment that the '038 Patent is invalid and void.

18.    Absent a declaration by this Court, Premark has and will continue to wrongfully assert the '038 Patent against Label Dollars and thereby cause Label Dollars irreparable injury and damage.

## COUNT II
### (*DECLARATORY JUDGMENT OF NON-INFRINGEMENT*)

19.    Label Dollars repeats and reasserts all allegations in paragraph 1-18 above as if they are stated in full herein.

20.    Label Dollars has not infringed any valid claim of the '038 Patent.

21.    Label Dollars has not induced, nor does it now induce, infringement of any valid claim of the '038 Patent.

DB01:2199590.1                                                                     900002.0003

22.    Label Dollars has not contributorily infringed, nor does it now contributorily infringe, any valid claim of the '038 Patent.

23.    Label Dollars is entitled to a declaratory judgment that it has not directly, contributorily, or by inducement, infringed any valid claim of the '038 Patent.

24.    Absent a declaration by this Court, Premark has and will continue to wrongfully assert the '038 Patent against Label Dollars and thereby cause Label Dollars irreparable injury and damage.

## COUNT III
### (*DECLARATORY JUDGMENT OF SOLE INVENTORSHIP*)

25.    Label Dollars repeats and reasserts all allegations in paragraph 1-24 above as if they are stated in full herein.

26.    Mortimer was the first to conceive and reduce to practice all of the subject matter of the claims issued in the '038 Patent.

27.    Schuller, the named inventor, did not conceive of the subject matter of the claims issued in the '038 Patent, but rather derived the claimed invention from Mortimer.

28.    Inventorship of the '038 Patent should be corrected, pursuant to 35 U.S.C. §256, to show Mortimer as inventor of the '038 Patent and to delete Schuller as a named inventor.

29.    Label Dollars is entitled to a declaratory judgment that the named inventor, Schuller, of the '038 Patent should be removed and that Mortimer should be added as the sole inventor of the '038 Patent.

30.    As a direct and proximate result of the wrongful acts of Schuller and Premark alleged above, Label Dollars has suffered and will continue to suffer injury to its business, including but not limited to monetary damage in an amount that cannot presently be ascertained.

## COUNT IV
### (*DECLARATORY JUDGMENT OF JOINT INVENTORSHIP* )

31.    Label Dollars repeats and reasserts all allegations in paragraph 1-30 above as if they are stated in full herein.

32.    Mortimer was the first to conceive and reduce to practice the subject matter of one or more of the claims issued in the '038 Patent.

33.    Inventorship of the '038 Patent should be corrected pursuant to 35 U.S.C. §256, to show Mortimer as an inventor of the '038 Patent.

34.    Alternatively, Label Dollars is entitled to a declaratory judgment that Mortimer should be added as a named joint inventor of the '038 Patent.

35.    As a direct and proximate result of the wrongful acts of Schuller and Premark alleged above, Label Dollars has suffered and will continue to suffer injury to its business, including but not limited to monetary damage in an amount that cannot presently be ascertained.

## COUNT V
### (*CONSTRUCTIVE TRUST* )

36.    Label Dollars repeats and reasserts all allegations in paragraph 1-35 above as if they are stated in full herein.

37.    Mortimer of Label Dollars was the first to conceive and reduce to practice all of the subject matter of the claims issued in the '038 Patent.  As a result, Label Dollars is the owner of all rights in and to the '038 Patent.

38.    Schuller of Hobart, the named inventor, did not conceive of the subject matter of the claims issued in the '038 Patent, but rather derived the invention from Mortimer.  As a result, Premark does not own any rights to and to the '038 Patent.

7

39.    Since the '038 Patent is owned by Label Dollars, the Court should impose a constructive trust and order Premark to assign its alleged rights in the '038 Patent to Label Dollars, and award to Label Dollars any profits, revenues, royalties or other benefits obtained by Premark relating to the '038 Patent.

## REQUEST FOR RELIEF

WHEREFORE, Label Dollars respectfully requests that judgment be entered in its favor as follows:

1.    Declaring that each of the claims of the '038 Patent is invalid and/or not infringed by Label Dollars;

2.    Declaring that Label Dollars has not contributorily infringed the '038 Patent, and has not induced others to infringe the '038 Patent;

3.    Declaring that the named inventor, Schuller, of the '038 Patent should be removed and that Mortimer should be added as the sole named inventor of the '038 Patent;

4.    Alternatively, declaring that Mortimer should be added as a named joint inventor of the '038 Patent;

5.    Finding that this is an exceptional case pursuant to 35 U.S.C. §285 and awarding attorneys' fees, costs and expenses to Label Dollars in connection with this case;

6.    Imposing a constructive trust for the benefit of Label Dollars and ordering that Premark assign all rights in the '038 Patent to Label Dollars, and awarding any profits, revenues, royalties or other benefits obtained by Premark relating thereto;

8

7.      Awarding damages to Label Dollars as compensation for defendant's unlawful acts; and

8.      Awarding such further and additional relief as the Court deems just and proper.

YOUNG, CONAWAY, STARGATT & TAYLOR, LLP

Josy W. Ingersoll (No. 1088)
John W. Shaw (No. 3362)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899-0391
(302) 571-6600
jshaw@ycst.com

– and –

Norman H. Zivin
Tonia A. Sayour
COOPER & DUNHAM LLP
1185 Avenue of the Americas
New York, New York 10036
(212) 278-0400

Attorneys for Plaintiff Label$Dollars, Corp.

Dated:  September 25, 2006

9

# Exhibit A



US007026556B1

(12) **United States Patent**　　　　(10) **Patent No.:** 　**US 7,026,556 B1**

Schuller　　　　　　　　　　　　　　(45) **Date of Patent:** 　　Apr. 11, 2006

(54) **METHOD AND SYSTEM FOR CONTROLLING MESSAGES PRINTED BY AN IN STORE LABEL PRINTER AND RELATED LABEL STRUCTURE**

(75) Inventor: **Robert J. Schuller**, Troy, OH (US)

(73) Assignee: **Premark FEG L.L.C.**, Wilmington, DE (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 424 days.

(21) Appl. No.: **09/663,285**

(22) Filed: **Sep. 15, 2000**

(51) **Int. Cl.**
| | |
|---|---|
| G01G 19/40 | (2006.01) |
| G01G 23/38 | (2006.01) |
| G01G 19/413 | (2006.01) |
| G06F 17/60 | (2006.01) |

(52) **U.S. Cl.** ........................... 177/25.15; 177/4; 705/14; 705/414

(58) **Field of Classification Search** ............. 177/2, 177/3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 25.15, 177/25.19; 705/414, 415, 416, 14
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 3,711,683 | A | 1/1973 | Harnisch, Sr. | ........ 235/61.12 N |
| 3,757,037 | A | 9/1973 | Bialek | ...................... 178/6.6 A |
| 3,994,089 | A | 11/1976 | Schwartz | ................... 40/310 |
| 4,323,508 | A | 4/1982 | Denny et al. | ............... 428/43 |
| 4,423,486 | A | 12/1983 | Berner | ...................... 705/416 |
| 4,457,539 | A | 7/1984 | Harnisch, Jr. | .............. 283/81 |
| 4,598,780 | A | 7/1986 | Iwasaki et al. | ................. 177/3 |
| 4,674,041 | A | 6/1987 | Lemon et al. | ............... 705/14 |
| 4,723,212 | A | 2/1988 | Mindrum et al. | .......... 705/14 |
| 4,901,237 | A | * | 2/1990 | Hikita et al. | .................. 177/4 |
| 4,901,457 | A | 2/1990 | Chandler | ................... 40/306 |
| 4,910,672 | A | 3/1990 | Off et al. | ...................... 705/14 |

| | | | | |
|---|---|---|---|---|
| 4,928,229 | A | 5/1990 | Teraoka et al. | ............. 705/414 |
| 4,929,818 | A | 5/1990 | Bradbury et al. | .......... 235/381 |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| EP | 0 837 411 A1 | 4/1998 |
| EP | 0 853 290 A2 | 7/1998 |

(Continued)

OTHER PUBLICATIONS

Ishida, *AC-3000 Series* brochure, 6 pages, published at least as early as Nov. 26, 1996.

(Continued)

*Primary Examiner*—Randy W. Gibson
(74) *Attorney, Agent, or Firm*—Thompson Hine LLP

(57) **ABSTRACT**

A method for selectively printing different messages on labels printed by an in-store scale involves providing an in-store scale including a label printing mechanism with a supply of labels and a communications link for receiving information from a site external to the store. The scale label printing mechanism is configured in a first state and, during the first state, simultaneous printing of two types of information on a first label takes place. In particular, both (i) product information for a specified product to which the first label will be applied and (ii) a first message pertaining to a product which is different than the specified product to which the first label will be applied, are printed on the first label. The in-store scale receives a message control signal via the communications link which configures the scale label printing mechanism in a second state. During the second state, simultaneous printing of two types of information on a second label takes place. In particular, both (i) product information for a specified product to which the second label will be applied and (ii) a second message, different than the first message, and also pertaining to a product which is different than the specified product to which the second label will be applied, are printed on the second label.

**29 Claims, 5 Drawing Sheets**



US 7,026,556 B1
Page 2

## U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 4,932,485 A | * | 6/1990 | Mori | 177/25.15 |
| 5,083,638 A | | 1/1992 | Schneider | 186/61 |
| 5,172,936 A | | 12/1992 | Sullivan et al. | 283/81 |
| 5,173,851 A | | 12/1992 | Off et al. | 705/14 |
| 5,185,695 A | | 2/1993 | Pruchnicki | 705/14 |
| 5,200,889 A | | 4/1993 | Mori | 705/14 |
| 5,329,713 A | | 7/1994 | Lundell | 40/310 |
| 5,350,612 A | | 9/1994 | Stern et al. | 428/40 |
| 5,439,721 A | | 8/1995 | Pedroli et al. | 428/40 |
| 5,560,718 A | | 10/1996 | Furuya | 400/68 |
| 5,578,797 A | * | 11/1996 | Hewitt et al. | 177/5 |
| 5,612,868 A | | 3/1997 | Off et al. | 705/14 |
| 5,642,485 A | | 6/1997 | Deaton et al. | 705/14 |
| 5,649,114 A | | 7/1997 | Deaton et al. | 705/14 |
| 5,758,328 A | | 5/1998 | Giovannoli | 705/26 |
| 5,774,868 A | | 6/1998 | Cragun et al. | 705/10 |
| 5,832,457 A | | 11/1998 | O'Brien et al. | 705/14 |
| 5,857,175 A | | 1/1999 | Day et al. | 705/14 |
| 5,865,470 A | | 2/1999 | Thompson | 283/70 |
| 5,866,181 A | | 2/1999 | Hill | 426/107 |
| 5,887,271 A | | 3/1999 | Powell | 705/14 |
| 5,892,827 A | | 4/1999 | Beach et al. | 705/76 |
| 5,895,075 A | | 4/1999 | Edwards | 283/81 |
| 5,926,795 A | | 7/1999 | Williams | 705/14 |
| 5,943,654 A | | 8/1999 | Goodwin, III et al. | 705/14 |
| 5,956,877 A | | 9/1999 | Raasch et al. | 40/702 |
| 5,974,396 A | | 10/1999 | Anderson et al. | 705/10 |
| 5,974,399 A | | 10/1999 | Giuliani et al. | 705/14 |
| 6,009,411 A | | 12/1999 | Kepecs | 705/14 |
| 6,014,634 A | | 1/2000 | Scroggie et al. | 705/14 |
| 6,026,370 A | | 2/2000 | Jermyn | 705/14 |
| 6,026,373 A | | 2/2000 | Goodwin, III | 705/20 |
| 6,041,309 A | | 3/2000 | Laor | 705/14 |
| 6,042,149 A | | 3/2000 | Roshkoff | 283/67 |
| 6,047,263 A | | 4/2000 | Goodwin, III | 705/20 |
| 6,055,573 A | | 4/2000 | Gardenswartz et al. | 709/224 |
| 6,067,524 A | | 5/2000 | Byerly et al. | 705/3 |
| 6,076,069 A | | 6/2000 | Laor | 705/14 |
| 6,138,911 A | * | 10/2000 | Fredregill et al. | 705/14 |

| | | | | |
|---|---|---|---|---|
| 6,151,586 A | * | 11/2000 | Brown | 705/14 |
| 6,151,587 A | | 11/2000 | Matthias | 705/14 |
| 6,240,394 B1 | | 5/2001 | Uecker et al. | 705/3 |
| 6,278,979 B1 | | 8/2001 | Williams | 705/14 |
| 6,282,516 B1 | | 8/2001 | Giuliani | 705/14 |
| 6,304,849 B1 | | 10/2001 | Uecker et al. | 705/3 |
| 6,307,958 B1 | | 10/2001 | Deaton et al. | 382/139 |
| 6,321,210 B1 | | 11/2001 | O'Brien et al. | 705/14 |
| 6,334,108 B1 | | 12/2001 | Deaton et al. | 705/14 |
| 6,351,735 B1 | | 2/2002 | Deaton et al. | 705/14 |
| 2003/0205412 A1 | | 11/2003 | Hewitt et al. | |

## FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| EP | 0 853 290 A3 | 1/1999 |
| EP | 01 11 6328 | 11/2003 |
| FR | 2741067 | 6/1997 |
| JP | 60193824 | 10/1985 |
| JP | 63144667 | 6/1988 |
| JP | 63178875 | 7/1988 |
| JP | 63191370 | 8/1988 |
| JP | 3138171 | 6/1991 |

## OTHER PUBLICATIONS

Hobart Food Equipment, "CLA Compact Label Applier", For Trayed Self–Service Meat, Poultry, Fish and Produce, May 1993.

Hobart Food Equipment, "Hilite Label Printer & Applier", For Printing and Applying Merchandising Labels, May, 1988.

Hobart Food Equipment, "ULTIMA 2000 PLU Prepack Weighing System", The Hobart Ultima 2000 PLU Prepack Weighing System Provides Merchandising Flexibility, Nutritional and Text Printing and Is Very Simple To Use, Mar. 1993.

Hobart, "ULTIMA 2000", The ultimate pre–pack scale/printer merchandising system, Dec. 1992.

Hobart, "Weigh/Wrap/Label Systems", Aug. 1999.

* cited by examiner



FIG. 1



FIG. 2



FIG. 3



FIG. 4A

FIG. 4B

FIG. 5

FIG. 6



FIG. 7A



FIG. 7B



FIG. 8



FIG. 9A
(PRIOR ART)

FIG. 9B
(PRIOR ART)

FIG. 10
(PRIOR ART)

US 7,026,556 B1

1

## METHOD AND SYSTEM FOR CONTROLLING MESSAGES PRINTED BY AN IN STORE LABEL PRINTER AND RELATED LABEL STRUCTURE

### FIELD OF THE INVENTION

The present invention relates generally to in-store printer mechanisms utilized for printing labels applied to products and to label structures utilized by such printer mechanisms, and more particularly, to a method and system for controlling messages printed on labels by an in-store scale for increasing marketing and promotional opportunities.

### BACKGROUND OF THE INVENTION

The perishable foods sections of most supermarkets and grocery stores such as the meat department, bakery, deli and produce department, typically include one or more in-store printers for printing labels with item name, weight or count, and price information. The labels are then applied to the packaged items. Many such printers are provided as part of in-store scales or systems including scales. FIG. 9A represents a front surface view of a typical pre-printed label 200 which may be utilized in the scale. The label 200 is often times pre-printed with store-specific information such as the store name and/or logo in a predetermined portion 202 of the label and a remaining portion 204 of the label is left blank to permit the scale printer to print product name, weight, price information, and product bar code in such space. FIG. 9B represents a front surface view of another label 210 which has been used in the past and which is pre-printed with store-specific information such as the store name and/or logo in a predetermined portion 212 and is also pre-printed in label portion 214 with an advertisement message/logo which may relate to any other product sold in the store. Remaining portion 216 is left blank to permit the scale printer to print product name, weight, price information, and product bar code in such space. The problem with the pre-printed advertisement is that it is permanent and cannot be adjusted at the store.

Increasingly, in-store equipment such as scales/scale systems may include a communications link for receiving information externally of the store. As used herein the term scale system refers to any scale device or any larger device which includes a scale, such as a weigh/wrap machine. For example, prior art scale systems exist in which pricing information in the goods database is updated remotely from a central location so that all related stores in a chain use the same pricing scheme. Chain personnel can also use communications links with in-store scale systems to monitor scale status/function. Still further, prior art in-store scale systems exist which are capable of printing two labels, one which includes the product and price information and another which prints a marketing message. An example of such a prior art system is illustrated in FIG. 10 where a store 300 is shown and external site 302 is shown. A scale system 304 including a controller 306 and associated printer 308 is located in the store 302, along with a second printer 310 which is connected to controller 306 for control thereby. The controller 306 is also connected via communications link 312 to a computer 314 at external site 302. In the illustrated system, computer 314 has been used to control pricing information used by scale 304 for printing on a first label by printer 308, and to also control merchandising messages printed on a second, separate label by printer 310, where the pricing information printed by printer 308 and the merchan-

2

dising information printed by printer 310 related to the same product. Examples of merchandising messages printed on the second label by printer 310 include "Great For The Grill" or "100% Pure Ground Beef" or "50¢ Off". Such prior art systems have also been used to print similar merchandising messages, regarding the product to which a pricing label is applied, on the pricing label itself.

Product manufacturers, distributors, advertisers and store operators are continually looking for new and improved ways to market and advertise products within the store. Accordingly, given the number of labels printed on a daily basis by such scales, and the fact that the packages containing such labels are typically placed directly in front of consumers or into the consumer's hands, it would be desirable to utilize such scales to deliver marketing and promotional messages for numerous products in a controlled manner.

In the label printing field it is also known to provide coupons on labels which are applied to products. For example, U.S. Pat. No. 5,578,797 provides a label structure which includes both a product bar code and a coupon bar code on a front surface of the label. The coupon portion of the label is designed to be torn off by the customer. However, some customers may not tear off the coupon. In such cases, this label structure can be problematic because checkout scanners can be confused by the presence of two bar codes on the label. Accordingly, it would also be desirable to provide a label structure which provides coupon capability while overcoming the aforementioned problem.

### SUMMARY OF THE INVENTION

In one aspect of the present invention, a method for selectively printing different messages on labels printed by an in-store scale involves providing an in-store scale including a label printing mechanism with a supply of labels and a communications link for receiving information from a site external to the store. The scale label printing mechanism is configured in a first state and, during the first state, simultaneous printing of two types of information on a first label takes place. In particular, both (i) product information for a specified product to which the first label will be applied and (ii) a first message pertaining to a product which is different than the specified product to which the first label will be applied, are printed on the first label. The in-store scale receives a message control signal via the communications link which configures the scale label printing mechanism in a second state. During the second state, simultaneous printing of two types of information on a second label takes place. In particular, both (i) product information for a specified product to which the second label will be applied and (ii) a second message, different than the first message, and also pertaining to a product which is different than the specified product to which the second label will be applied, are printed on the second label. Thus, the method enables messages imprinted on labels to be selectively controlled by parties such as the manufacturer or distributor of the predetermined product, or an advertising agency charged with increasing sales of the predetermined product.

In one variation of the method, the first and second messages relate to coupon discount amounts for the predetermined product. In connection with this variation, another aspect of the invention provides a label structure including a base paper having front and rear surfaces, at least one pre-printed information region toward the rear surface of the base paper. The pre-printed information region is formed by an adhesive layer adjacent the rear surface of the base paper,

US 7,026,556 B1

3

an adhesive deadening layer overlaying the adhesive layer in a defined area, and a layer of printed information overlaying at least portions of the adhesive deadening layer. The layer of printed information may include a coupon bar code which can be tied to the coupon discount information to be printed on the front surface of the label. Because the coupon bar code is provided on the rear surface of the label, it will face inward against a package and will not cause confusion with the product bar code on the front surface of the label during scanning, in the event the customer does not detach the coupon before checkout.

Still a further aspect of the invention provides a method for controlling an in-store label coupon printing system involves providing an in-store label printing mechanism including a controller and associated memory, and a user input device. A supply of labels is also provided for the in-store printing mechanism, each label including a pre-printed coupon bar code on a rear surface portion thereof. The user input device is selectively utilized to establish a coupon message to be printed on a front surface of the labels by the in-store printing mechanism. A stored discount amount associated with the coupon bar code is provided in at least one of an in-store point-of-sale computer system memory and a store computer system memory. The stored discount amount is adjusted as needed to coincide with changes made in the coupon message printed by the in-store label printing mechanism.

BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a schematic diagram of one embodiment of a label printing system in accordance with the present invention;

FIG. 2 is a schematic diagram of a scale mechanism including a label printer;

FIG. 3 is a flowchart of steps according to one embodiment of a method of the present invention;

FIGS. 4A and 4B show front and rear surface views of one embodiment of a label structure according to the invention;

FIG. 5 is a cross sectional view along line 5—5 of FIG. 4A;

FIG. 6 is a side view of a supply roll of labels;

FIGS. 7A and 7B show front and rear surface views of a printed label;

FIG. 8 is a perspective view of a labeled package assembly;

FIGS. 9A and 9B show front and rear surface views of prior art labels; and

FIGS. 10 is a schematic diagram of a prior art system.

DETAILED DESCRIPTION OF THE EMBODIMENTS

Referring to drawing FIG. 1, a schematic diagram of a system 10 useful in carrying out the present invention includes a store 12, a communications path 14, and a retail headquarters, product manufacturer, distributor or advertising agency location 15. The store includes scale system 16 which is connected to the communications path 14 via communications link 18 for receiving externally generated messages, such as those generated by a computer 20 at location 15. The store 12 also includes a store computer system 22 which may be used for tracking and maintaining inventory and a point-of-sale (POS) computer system 24 which is utilized for customer checkout and typically includes a plurality of bar code scanners. Communications

4

link 26 between the scale system 16 and POS system 24 may be provided and communications link 28 between the store computer system 22 and scale system 16 may also be provided. While the use of communications link 18 to enable the scale to receive external messages is preferred, it is recognized that the scale could receive such externally generated messages via indirect links such as a communications link comprised of link 30, store computer system 22 and link 28. Links 18, 26, 28 and 30 are preferably hard-wired links such as typical telephone line or coax links, but it is recognized that wireless links could also be utilized. Communications path 14 may preferably be an Internet link but might also be a dedicated type link. In either case the path may be formed by any one of hard-wired, fiber-optic or wireless type arrangements, and combinations of the same.

As shown in FIG. 2, the scale system 16 includes a controller 40 with an associated communications interface 42. The controller 40 typically includes associated memory for storing firmware, software and data as needed. At least one load cell and associated circuitry 44 are provided for delivering weight information to the controller 40. The controller 40 is connected for controlling a display 46 such as an LED or LCD, and also for controlling a printing mechanism portion which includes print head 48, label supply 50, and mechanism such as a motor drive (not shown) for moving label stock past the print head 48 along a predefined path 52. A user input device 54 such as a plurality of user input keys or a touch screen arrangement associated with the display 46 enables a user to input information such as the product type and cost per pound or product code, as well as other information, to the controller 40.

Scale system 16 may be representative of the typical scale system utilized in one or more of the perishables departments of a supermarket or grocery store for printing labels which are then applied to products. For example, stand alone scales in the deli department print labels which are typically applied to lunch meats, cheeses, side salads and the like. Such scales can also be utilized in the produce department or meat and fish departments. Weigh/wrap type machines are also commonly used. Regardless of where the scale system is located, the present invention enables it to be utilized in a new and improved manner for selective control of messages printed on labels. In particular, referring to the flow chart 60 of FIG. 3, exemplary steps in one embodiment of the message control method of the present invention are shown. It is assumed at initial step 62 that the in-store scale system 16 including label printing mechanism 48, supply of labels 50, and communications link 18 for receiving information from a site external to the store is configured in a first state. At step 64 a specified product (e.g. lunch meat) is weighed and price calculated. At step 66 simultaneous printing of two types of information on a first label takes place. In particular, both (i) product information (name and price) for the specified product to which the first label will be applied and (ii) a first message pertaining to a product (e.g. potato chips) which is different than the specified product, are printed on the first label. Thereafter, at step 68 a stand by for the next weigh and print is indicated. If there is no change from the first state of the scale system printer then path 70 will be followed and the next label will be simultaneously imprinted with specified product information and the first message. However, if there is a change from a first state of the scale printer to a second state of the scale system printer, then path 72 will be followed and the next scale weigh operation will take place at step 74 and at step 76 simultaneous printing of two types of information on a

US 7,026,556 B1

5

second label takes place. In particular, both (i) product information (name and price) for the specified product to which the second label will be applied and (ii) a second message, different than the first and pertaining to the a product which is different than the specified product, are printed on the second label. A new standby state 78 is then shown, with optional paths 80 and 82 according to whether a state change in the scale system printer occurs.

As used herein, the terminology "simultaneous printing" of information on a label refers to printing which takes place on the label as it passes by the printhead in a single pass, and encompasses, without limitation, both side-by-side printing of information and printing first information on a first portion of the label as the first portion passes by the print head and, subsequently, printing second information on a second portion of the label as the second portion of the label passes by the print head.

The state change of the scale system printer may be controlled by receipt by the in-store scale of a message control signal via the communications link which configures the scale label printer in a second state. In one embodiment the scale 16 includes a stored table of selectable message options, each including an associated message indicator as shown in representative Table I below:

TABLE I

STORED MESSAGE OPTIONS TABLE

| Message Indicator | Message Option |
|---|---|
| 0000 | 50 Cents Off - Expires MM/DD/YY |
| 0001 | 25 Cents Off - Expires MM/DD/YY |
| 0010 | 10 Cents Off - Valid MM/DD/YY–MM/DD/YY |
| 0011 | 2 For 1 Special - Valid MM/DD/YY–MM/DD/YY |
| 0100 | Try New (BRAND) Chips - Now With Less Fat |
| 0101 | Try (BRAND)'s New Barbecue Style |

In this arrangement, the scale system also includes a memory location including a selected message indicator. Thus, in state 1 of the example described above the stored selected message indicator could be "0000" in which case during the printing operation of step 66 the scale controller references stored message options Table I and retrieves the "50 Cents Off—Expires MM/DD/YY" message for printing. The control message received via the communications link to cause the state change will be another message indicator such as "0010" which in turn is automatically and immediately overwritten into the selected message indicator memory location. Thereafter, during the printing operation of step 76 the scale controller references stored message options Table I and retrieves the "10 Cents Off—Valid MM/DD/YY— MM/DD/YY" message for printing. Alternatively, the control message received via the communications link may include a new message indicator and associated time or date at which such new message indicator is to be utilized as the selected message indicator. In such cases the data structure storing the selected message indicator may also comprise a table such as Table II below:

TABLE II

SELECTED MESSAGE INDICATORS

| Start Date | Selected Message Indicator |
|---|---|
| MM/DD/YY | 0000 |
| MM/DD/YY | 0010 |
| MM/DD/YY | 0100 |

In this arrangement the scale system controller is configured to utilize a running time clock to determine when to change

6

the scale system printer state and begin using a new message indicator. Thus, externally generated message control signals can be utilized to establish a future message selection pattern as desired.

Utilizing the stored message table technique enables the store owner/operator and the outside entity (product manufacturer, distributor or advertiser) to agree upon permissible messages in advance. However, an alternative embodiment in which the scale system merely stores the message to be printed for state 1 in memory and in which the message control signal received by the scale contains the new message for printing (as opposed to a message indicator) in state 2 is contemplated. Still further, where the stored message table arrangement is utilized, it is possible that the communications link could be utilized to update or revise the stored message table in memory of the scale. In either embodiment, the system and method enables messages printed on labels in the store to be selectively controlled by parties such as chain personnel at retail headquarters, the manufacturer or distributor of the predetermined product, or an advertising agency charged with increasing sales of the predetermined product.

It is recognized that Table I is merely representative of one type of message options table and that others could be utilized. For example, an alternative message options table is set forth below as Table III:

TABLE III

STORED MESSAGE OPTIONS TABLE

| Message Indicator | Message Option - Part 1 | Message Option - Part 2 |
|---|---|---|
| 0000 | 50 Cents Off | Expires MM/DD/YY |
| 0001 | 25 Cents Off | Expires MM/DD/YY |
| 0010 | 10 Cents Off | Valid MM/DD/YY–MM/DD/YY |
| 0011 | 2 For 1 Special | Valid MM/DD/YY–MM/DD/YY |
| 0100 | Try New (BRAND) Chips | Now With Less Fat |
| 0101 | (BRAND)'s Barbecue Style | Preferred 2 To 1 |

Notably, Table II includes two message option parts which the controller can retrieve for printing at different locations on the label. It is also contemplated that a three-dimensional message table or map could be utilized. Such a table could store messages as a function of message indicator and specified product to which a label is to be applied, so that the message is varied according to selected message indicator and the product to which the label is to be applied. For example, if steak is purchased a message for one product might be printed while if hot dogs are purchased a message for another product might be printed.

As demonstrated by the last two messages in each of Tables I and III, the messages which are selected for printing may be non-coupon messages. However, in a preferred arrangement the messages which are selected for printing on labels output by the scale system relate to coupon discount information for the predetermined product. For example, as indicated in Table I above the message may be an amount off, a 2 for 1 type special, or might also be a percent off type coupon discount amount. In this regard, a preferred label structure 90 for use in combination with the message control method is illustrated in front and rear surface views respectively in FIGS. 4A and 4B. Label structure 90 includes a front face 92 having a store name/logo 94 pre-printed thereon, a central region 96 defined by a separation line 98 and a lower region 100 defined by the edges of the label and separation line 102. Separation lines 98 and 102 may be

US 7,026,556 B1

7

formed by any known means including perforation or other weakening of the base paper. The region between store name/logo 94 and the separation line 102 will be used during a printing operation of the scale system to print name and price information and/or product bar code for the specified product to which the label is to be attached. The region below separation line 102 will be used during a printing operation of the scale system to print the message information for the predetermined product. In this regard, the lower region may include a pre-printed name and/or design element of the predetermined product in region 104, with the selectable message then being printed to the right of region 104.

Where the selectable message is a coupon discount message, the label structure rear surface 110 preferably includes a pre-printed coupon bar code 112 on the lower portion of the label so that when the lower portion of the label is detached, the coupon bar code stays with the coupon message printed on the front side. On the rear side of the region defined by separation line 102, other pre-printed information may be provided such as recipe type information. Where the selectable message information is a coupon discount message, a further step is in order to correlate the change in coupon discount information to the coupon bar code which will be scanned at check-out by the P.O.S. computer system 24 (FIG. 1). One or both of the P.O.S. computer system 24 and the store computer system 22 will include a stored discount amount associated with the coupon bar code 112. When the coupon discount message is changed, the stored discount amount associated with bar code 112 will also need to be changed at some point in the future. Generally, the stored discount amount associated with bar code 112 will be changed at a time corresponding to both the expiration of the valid period for coupons having a first coupon message and the beginning of the valid period for other coupons having a second coupon message. Links 26 and 28 facilitate adjustment of the stored discount amount associated with the coupon bar code 112 as needed. The expiration date of a given coupon discount is printed on the front of the label (see Tables I and III) to prevent problems with customers attempting to use a coupon after the stored amount has been exceeded.

Referring again to FIGS. 4A and 4B, an important distinction exists between pre-printed information provided on a label and information which is printed by the in-store scale system. In particular, "pre-printed" information exists on the labels when supplied to a store and therefore cannot be changed or modified by the store unless a different label format is chosen/selected or unless an attempt is made to overwrite or black out a pre-printed message on the front of a label. Referring to the cross-sectional view of FIG. 5 the label structure 90 is formed by a base paper 114. Toward the front surface side of the base paper a layer 116 formed by a thermally sensitive composition is first provided and atop the thermal layer 116 a layer or coating 118 of a sealing composition is provided to prevent loss of the thermal layer 116. Atop the sealing layer 118 an ink-based layer 120 of pre-printed information is provided in those regions where such pre-printing is provided. When indicia 122 (e.g. selectable messages) are printed by the thermal print head of the scale, such messages are formed in the thermal layer 116 but are visible through the clear sealing layer 118. Toward the rear side of the base paper 114 a layer 124 of an adhesive composition is provided for securing the label to a product package. In those regions where pre-printed information is provided on the rear surface of the label 90, the adhesive layer 124 is covered by an adhesive deadening layer 126 so

8

that that portion of the label can be removed from the package easily. The adhesive deadening layer may typically be formed by a layer of white ink applied over the adhesive. An ink-based layer 128 of pre-printed information (e.g. coupon bar code or recipe) is then applied over the adhesive deadening layer. Referring to FIG. 6 a representative supply roll 130 of label structures 90 is shown. The supply roll includes a liner 132 having a silicone release layer 134 applied thereto such that when the adhesive side of label structures 90 is applied to the liner they can be easily removed for dispensing from the scale and application to a product package.

The manufacturing method for producing such label stock involves starting with a wide roll of stock with label material with adhesive side attached to the release surface base paper. The label material is then re-applied to the base paper. The label material is then die-cut to form individual labels and length cut to form multiple label supply rolls.

After printing product information and message information on a label as described above, the resulting label structure may be that shown in FIGS. 7A and 7B where front and rear surface portions of a printed label structure 140 are shown. In particular the front surface 142 of printed label structure 140 includes a product bar code 144 thereon as printed by the scale print head. The rear surface 146 of the label structure includes the pre-printed coupon bar code 148. This arrangement eliminates the possibility that the P.O.S. scanners will confuse the two bar codes during check-out. Because the coupon portion of the label might be removed by the consumer prior to check-out, the product bar code 146 on the front surface is preferably positioned at a location spaced from but proximate to a location of the scannable coupon information bar code. In this regard, the term "proximate" is used to refer to a location which results in positioning of the product bar code 142 toward the same side 150 (FIG. 8) of a product package 152 as the coupon bar code 148 when the label is applied to the product package forming a label and package assembly 154.

Although the invention has been described and illustrated in detail it is to be clearly understood that the same is intended by way of illustration and example only and is not intended to be taken by way of limitation.

For example, while a major advantage of the above-described method provides retailers, product manufacturers, distributors and advertisers the ability to selective control messages printed on labels printed in a store, it is recognized that the user input device 54 may be used to selectively control messages as well. Thus, a method for controlling an in-store label coupon printing system is provided which involves providing an in-store label printing mechanism including a controller and associated memory, and a user input device, and providing a supply of labels for the in-store printing mechanism, each label including a pre-printed coupon bar code on a rear surface portion thereof. The user input device is selectively utilized to establish a coupon message to be printed on a front surface of the labels by the in-store printing mechanism. A stored discount amount associated with the coupon bar code is provided in at least one of an in-store point-of-sale computer system memory and a store computer system memory. The stored discount amount can be adjusted to coincide with changes made in the coupon message printed by the in-store label printing mechanism.

Further, while the use of a scale system with an associated print head is primarily discussed herein, it is recognized that other in-store label printing mechanisms could also be used for selective control of messages printed on labels.

Accordingly, the spirit and scope of the invention are to be limited only by the terms of the appended claims.

US 7,026,556 B1

9 | 10

What is claimed is:

1. A method for selectively printing different messages on labels printed by an in-store scale system, the method comprising the steps of:

(a) providing an in-store scale system including a label printing mechanism with a supply of labels, and a communications link for receiving information from a site external to the store;

(b) configuring the scale system label printing mechanism in a first state;

(c) during the first state, for each label output by the scale system label printing mechanism, printing both:
 (i) at least one of product name and price information for a product to which the label will be applied, and
 (ii) a first message pertaining to a predetermined product which is different than the product to which the label will be applied,

(d) receiving, by the scale system, a message control signal via the communications link which configures the scale system label printing mechanism in a second state; and

(e) during the second state, for each label output by the scale system label printing mechanism, printing both:
 (i) at least one of product name and price information for a product to which the label will be applied, and
 (ii) a second message, different than the first message, and also pertaining to the predetermined product which is different than the product to which the label will be applied.

2. The method of claim 1 wherein step (a) includes providing at least one of a pre-printed name and design element of the predetermined product on each label.

3. The method of claim 1 wherein step (a) includes providing a pre-printed scannable coupon bar code on each label, and in steps (c)(ii) and (e)(ii) the first and second messages each comprise at least respective coupon discount amounts for the predetermined product.

4. The method of claim 3 wherein the pre-printed coupon bar code is associated with a stored discount amount in at least one of an in-store point-of-sale system and a store computer system, the method comprising the further step of:
 (f) adjusting the stored discount amount associated with the pre-printed coupon bar code to correspond to the coupon discount amount printed in step (e)(ii).

5. The method of claim 3 wherein in steps (c)(ii) and (e)(ii) the first and second messages each further comprise coupon validity information.

6. The method of claim 5 wherein the pre-printed coupon bar code is associated with a stored discount amount in at least one of an in-store point-of-sale system and a store computer system, the method comprising the further step of:
 (f) adjusting the stored discount amount associated with the pre-printed coupon bar code at a time which corresponds to expiration of the first coupon message and beginning of a validity period of the second coupon message.

7. The method of claim 3 wherein the pre-printed coupon bar code is provided on a rear surface portion of the labels, and the first and second messages are printed on an opposed front surface of the labels.

8. The method of claim 1 wherein step (a) includes providing a stored table of message options in memory of the scale system, each message option having an associated respective message indicator, and in step (d) the message control signal received via the communications link comprises at least one message indicator associated with one of the message options stored in memory of the scale system.

9. The method of claim 1 wherein step (a) includes providing the first message at a storage location in memory of the scale system, and in step (d) the message control signal received via the communications link comprises at least the second message, the method including storing the received second message in memory of the scale system.

10. The method of claim 1 wherein in step (d) the message control signal received via the communications link is sent by one of a manufacturer of the predetermined product, distributor of the predetermined product or advertiser of the predetermined product.

11. The method of claim 10 wherein step (a) includes providing a stored table of predetermined message options in memory of the scale system, the table associating a particular message indicator with each message option, and in step (d) the message control signal received via the communications link comprises at least one message indicator associated with one of the message options stored in memory of the scale system.

12. The method of claim 1 wherein subsequent to steps (c) and (e) the printed labels are applied to product packages.

13. The method of claim 1 wherein step (d) occurs subsequent to step (c).

14. An in-store label printing arrangement adapted for printing coupon information on labels to be applied to packages, comprising:

an in-store scale system including a print head and a supply of labels movable along a label path past the print head for having indicia printed on front surfaces thereof the labels each including a coupon bar code on its rear surface, a controller operatively connected for controlling the print head, memory having a table of message options stored therein, each message option having an associated respective message indicator;

a communications link associated with the controller of the scale system for receiving information from a site external to the store;

wherein in a first scale system configuration the controller is operable to effect printing of both (i) product information of a product to which a label is to be applied and (ii) a first coupon message according to a selected message indicator stored in memory, the first coupon message relating to a product which is different than the product to which the label is to be applied;

wherein the selected message indicator stored in memory is changed according to a message control signal received via the communications link, placing the scale system in a second configuration; and

wherein in the second scale system configuration the controller is operable to effect printing of both (i) product information of a product to which a label is to be applied and (ii) a second coupon message according to the change d selected message indicator stored in memory, the second coupon message also relating to a product which is different than the product to which the label is to be applied.

15. A method for printing coupon messages on labels by an in-store scale system, where the coupon messages are set by a manufacturer, distributor or advertiser of a certain product or certain products to which the coupon messages apply, the method comprising the steps of:

providing an in-store scale system in a perishables department of a store, the in-store scale system including a label printing mechanism and a communications link for receiving information established by the manufacturer, distributor or advertiser;

US 7,026,556 B1

11

providing a supply of labels in association with the in-store scale system label printing mechanism;

responsive to input of codes identifying products for weighing operations, accessing a table of predetermined message options and retrieving coupon messages from the table using message indicators associated with the codes identifying the products and printing, with the in-store scale system label printing mechanism, the retrieved coupon messages on labels, wherein the messages are printed on a front surface of the labels and comprise at least coupon discount amounts and coupon validity information; and

receiving, at the in-store scale system via the communications link, at least one message control signal established by the manufacturer, distributor or advertiser, the message control signal identifying at least one message indicator change for at least one product, enabling the manufacturer, distributor or advertiser to selectively control which of the predetermined message options is printed on labels by the in-store scale system label printing mechanism.

16. The method of claim 15 wherein an operator or owner of the store and the manufacturer, distributor or advertiser agree upon the predetermined message options prior to the step of providing the table of predetermined message options.

17. A method for controlling an in-store scale system to print coupon labels, the method comprising the steps of:

providing an in-store scale system with a label printing mechanism, a controller and associated memory, and a user input device;

providing a supply of labels for the in-store scale system label printing mechanism, each of the labels including a pre-printed coupon bar code on a portion thereof;

selectively utilizing the user input device to change a coupon message to be printed on a front surface of the labels by the in-store scale system label printing mechanism;

providing a stored discount amount associated with the coupon bar code in at least one of an in-store point-of-sale system memory and a store computer system memory; and

adjusting the stored discount amount to coincide with changes made in the coupon message printed by the in-store scale system label printing mechanism.

18. The method of claim 17 wherein the pre-printed coupon bar code is located on a rear portion of each label.

19. A method for selectively printing different messages on labels output by an in-store scale system label printing mechanism, the method comprising the steps of:

providing an in-store scale system label printing mechanism with a supply of labels, and a communications link for receiving information from a site external to the store;

printing on a first label both:
(i) at least one of product name and price information for a weighed product to which the first label will be applied, and
(ii) a first message pertaining to a product which is different than the weighed product to which the first label will be applied,

receiving, by the in-store scale system label printing mechanism, a message control signal via the communications link; and

12

printing on a second label both:
(i) at least one of product name and price information for a weighed product to which the second label will be applied, and
(ii) a second message, different than the first message and established by the received message control signal, and also pertaining to a product which is different than the weighed product to which the second label will be applied.

20. A method for selectively printing messages on a label output by an in-store scale system label printing mechanism, the method comprising the steps of:

providing an in-store scale system label printing mechanism with a supply of labels, and a communications link for receiving information from a site external to the store;

receiving, by the in-store scale system label printing mechanism, a message control signal via the communications link;

subsequent to receiving the message control signal, printing on a label both:
(i) at least one of product name and price information for a weighed product to which the first label will be applied, and
(ii) a message pertaining to a predetermined product which is different than the weighed product to which the first label will be applied, the message corresponding to the message control signal received in step (b).

21. The method of claim 18 wherein the first specified product and the second specified product are a same product.

22. The method of claim 18 wherein the perishables department is a deli department.

23. The method of claim 18 wherein the perishables department is a meat department.

24. The method of claim 18 wherein the in-store scale system comprises a weigh/wrap machine.

25. The method of claim 18 wherein each label of the supply of labels includes a pre-printed coupon bar code thereon.

26. A method for selectively printing different messages on labels output by an in-store scale system label printing mechanism, the method comprising the steps of:

providing an in-store scale system including a label printing mechanism with a supply of labels and a communications link for receiving control information, the in-store scale system located in a perishables department of a store;

specifying a first product to be weighed;

printing, by the in-store scale system label printing mechanism, on a label a first coupon message pertaining to a product that is different than the specified product, the first coupon message established based at least in part based upon the specified first product;

receiving, by the in-store scale system, a control signal via the communications link, the control signal containing coupon message control information generated from a site external to the store;

specifying a second product to be weighed; and

printing, by the in-store scale system label printing mechanism, on a subsequent label of the supply of labels a second coupon message different than the first coupon message and corresponding to the message control information contained in the received message control signal, the second coupon message pertaining to a product that is different than the second product and established based at least in part upon the specified second product.

US 7,026,556 B1

13

27. The method of claim 26 wherein both the specified product and the subsequent product are specified by entering a corresponding product code via a user input device.

28. The method of claim 26 wherein the control signal is received from an in-store computer system, the message control information generated from the site external to the store being initially passed to the in-store computer system.

29. The method of claim 26, comprising the further steps of:

14

subsequent to specifying the first product, calculating a price for the first product based upon weight; and

subsequent to specifying the second product, calculating a price for the second product based upon weight.

* * * * *

**Exhibit B**



US 20030218330A1

(19) **United States**
(12) **Patent Application Publication**    (10) Pub. No.: **US 2003/0218330 A1**
    Mortimer    (43) Pub. Date:    **Nov. 27, 2003**

(54) SYSTEMS AND METHODS FOR PROVIDING PRE-POINT-OF-SALE INCENTIVE MARKETING WITH PRE-PRINTED COUPONS

(76) Inventor: Lawrence Mortimer, Castle Rock, CO (US)

Correspondence Address:
HOGAN & HARTSON LLP
ONE TABOR CENTER, SUITE 1500
1200 SEVENTEENTH ST
DENVER, CO 80202 (US)

(21) Appl. No.:    10/328,928

(22) Filed:    Dec. 24, 2002

Related U.S. Application Data

(60) Provisional application No. 60/382,507, filed on May 21, 2002.

Publication Classification

(51) Int. Cl.[7] .................................................. B42D 15/00
(52) U.S. Cl. .................................................. 283/81

(57)    ABSTRACT

A system and method for providing incentives within a retail environment involving identifying shopping behavior indicators and providing incentives based on the identified shopping behavior indicators. Shopping behavior indicators comprise information related to a specific customer product selection, the information selected from the group consisting of: product type, name, brand, quantity, grade, price per unit, UPC, weight, source, shelf life and the like. These characteristics are a strong indicator of instantaneous consumer needs and desires. The present invention identifies one or more incentive offers associated with the shopping behavior indicators and provides the identified incentive offer after a customer has selected a specific product package and before the point of sale. The incentive offer may be provided in the form of a coupon that is printed at the time of product selection or preprinted and applied to a product package at any time before customer selection of the product package, including at centralized packaging and distribution facilities..

TURKEY BREAST CAJUN ARMOUR SWIFT

| TARE | 5/2/2002 | SELL BY |
| 0.01 LB | 01:29:32 PM | 5/15/2002 |
| NET WT/COUNT | UNITPRICE | TOTALPRICE |
| 0.52 LB | $5.99/LB | $3.11 |

*1014070764*    (S) SAFEWAY

| Heinz | TOMATO KETCHUP | $1.00 off |
| KRAFT | Salad Dressing | Buy one, get one free |
| French's | America's favorite Mustard | 25¢ DISCOUNT |
| (S) SAFEWAY | Film processing | $1.00 off |

Case 1:06-cv-00594-JJF    Document 1-2    Filed 09/25/2006    Page 2 of 31



US 2003/0218330 A1

Nov. 27, 2003

1

# SYSTEMS AND METHODS FOR PROVIDING PRE-POINT-OF-SALE INCENTIVE MARKETING WITH PRE-PRINTED COUPONS

## CROSS-REFERENCE TO RELATED APPLICATION

[0001] This application claims the benefit of U.S. Provisional Application No. 60/382,507, filed May 21, 2002, the disclosure of which is incorporated herein by reference.

## BACKGROUND OF THE INVENTION

[0002] 1. Field of the Invention

[0003] The present invention relates, in general, to coupons and other retail sales incentives, and, more particularly, to software, systems and methods for providing pre-point-of-sale incentives in retail grocery stores, preferably occurring at or near the point of product selection by a consumer.

[0004] 2. Relevant Background

[0005] Manufacturers and retailers use a variety of incentive mechanisms to motivate consumer shopping and purchasing behavior. Shopping behavior refers generally to the selection of one retail store over another, whereas purchasing behavior refers to the selection of particular products to purchase irrespective of the retail store. Historically, these incentives take the form of discounts or coupons that encourage store or brand loyalty, test price points, or simply encourage a consumer to purchase a particular product.

[0006] Given the expense of incentive systems to manufacturers and retailers, it remains a continuing problem to improve efficiency. Coupon distribution has a significant impact on efficiency. Coupon distribution will affect who receives a coupon, how the coupon is received, and when the coupon is received. Any or all of these factors may affect the consumers ability or willingness to redeem the coupon. Untargeted coupons distributed through newspapers and magazines, for example, generally have a very low redemption rate. Most people are familiar with receiving coupons for products they do not use, often at inconvenient times. Direct mail coupons offer the potential of targeting based on demographics, or upon consumer-specific shopping history. These targeted methods have higher redemption rates, but remain relatively inefficient.

[0007] Recently, point-of-sale (POS) coupons have been introduced. POS coupon systems enable a retailer to print coupons that are specifically relevant to a particular consumer based on items purchased during a particular transaction, and/or based upon shopping history. These coupons are intended to provide and incentive for the consumer to return to the issuing store at some time in the future. The coupons can be based on products purchased to either improve brand loyalty, or to encourage the consumer to try a competing brand (e.g., house brands). Moreover, POS coupons may encourage purchase of other goods or services offered by the retailer such as pharmacy, photo processing, or video rental.

[0008] Commercially available printers may be used for generating coupons at a point-of-sale, such as disclosed in U.S. Pat. No. 4,723,212 issued on Feb. 2, 1988 and entitled Method and Apparatus for Dispensing Discount Coupons or as further disclosed in U.S. Pat. No. 4,910,672 issued Mar.

20, 1990 and entitled Method and Apparatus for Dispensing Discount Coupons. As disclosed in these patents, systems may be provided to generate coupons at the point-of-sale based upon the type of product purchase. In the disclosures of the above-captioned two patents, a coupon relating to a particular type of a product is generated based upon a bar code reader determining that a triggering or competing product has just been purchased by the consumer.

[0009] In spite of the high level of control promised by POS coupon systems, they provide their incentive after a sale is complete. In many cases, an incentive to buy brand Y next time has little effect when the consumer just purchased brand X . . . it may be weeks or months until the product must be purchased again. Even when the incentives relate to products not purchased, it is unlikely that the consumer will re-enter the store immediately to take advantage of the incentive. Hence, the consumer is likely to misplace, discard, or simply forget about the coupon before it can be redeemed.

[0010] An alternative coupon distribution method is to attach coupons to products themselves either as instantly redeemable coupons or for redemption upon a subsequent purchase. Such coupons can be for the product to which they are attached (e.g., a box of cereal), or for complementary products (e.g., a coupon for milk attached to a box of cereal). In addition to manufacture coupons, specialty areas of grocery stores such as meat, fish, deli, pharmacy and similar departments may use attached coupons to provide various incentives as well. For example, a bakery department may attach a discount coupon to some packages in order to encourage sales of day old bread. However, such coupons are not specifically relevant to the purchasing consumer as they are printed and attached to products in advance of a consumer purchasing decision. Moreover, the pre-printed coupons cannot flexibly cross-sell a variety of other products or services within the store.

[0011] Hence, a need exists for a system and method that provides retail incentives before the point-of-sale, while retaining an ability to make the incentive specifically relevant to a particular consumer or particular purchase.

## SUMMARY OF THE INVENTION

[0012] Briefly stated, the present invention involves system and method for providing incentives within a retail environment involving identifying shopping behavior indicators and providing incentives based on the identified shopping behavior indicators. Shopping behavior indicators comprise information related to a specific customer product selection, the information selected from the group consisting of: product type, name, brand, quantity, grade, price per unit, UPC, weight, source, shelf life and the like. These characteristics are a strong indicator of instantaneous consumer needs and desires. The present invention identifies one or more incentive offers associated with the shopping behavior indicators and provides the identified incentive offer after a customer has selected a specific product package and before the point of sale. The incentive offer may be provided in the form of a coupon that is printed at the time of product selection or preprinted and applied to a product package at any time before customer selection of the product package, including at centralized packaging and distribution facilities.

US 2003/0218330 A1

Nov. 27, 2003

2

## BRIEF DESCRIPTION OF THE DRAWINGS

[0013]  FIG. 1 shows an networked retail environment in which the present invention is implemented; and

[0014]  FIG. 2 shows example label coupons in accordance with the present invention.

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

[0015]  The present invention is directed to a coupon system implemented in a retail grocery store having one or more specialty departments. In these specialty departments, a consumer selects goods and interacts with the retailer before the point-of-sale. During this interaction, a label of some kind is often printed to identify the product and pricing. The present invention leverages this installed system of label printing to provide incentive coupons at the point of product selection. These "label coupons" can be used to direct consumer purchases during the immediate shopping session, rather than requiring a subsequent trip back to the store.

[0016]  These label coupons are readily used to provide incentives to purchase complementary goods and/or services. For example, when a consumer selects a cut meat from the meat department, a coupon for complementary sauces, vegetables, or other products can be printed. The value of the coupon can be readily adjusted based on the value of the meat (or other product) selected. In another example, a consumer may select a number of picnic type items from the deli department which could produce a coupon for discounted film or photo processing. It is contemplated that the pre-point-of-sale incentive system of the present invention can be implemented with great flexibility and provides advantages that both complement and replace some of the advantages of prior coupon systems.

[0017]  The preferred implementations involve dynamic coupons, where the coupon identifies a qualifying product and/or a discount amount in response to the customer-selected product identified by the label to which the coupon is attached. This allows the coupon to be product-specific in that coupons for "turkey" at a deli department can be different than coupons for "roast beef". However, it is contemplated that pre-printed coupons may also be provided. Pre-printed coupons can be department-specific rather than product-specific. For example, pre-printed coupons at a fish counter may be different than pre-printed coupons at a deli counter.

[0018]  In either case, incentives are provided to a customer based upon customer product selection, and are provided before the point-of-sale. An important aspect of the present invention is the recognition that at the point of product selection the consumer is expressing unique and valuable information about the consumer's immediate, instantaneous desires, needs and intentions. This expression is fundamentally different than what is expressed by reviewing the customer's shopping history, for example.

[0019]  At the same time, the present invention enables the marketer to use this information immediately by providing incentives that are responsive to this immediate expression of desires, needs and intentions. Some in-store coupon systems attempt to provide incentives based on shopping history or other information so as to direct the consumer to

a particular product selection, rather than in response to the product selection. As a result, they fail to utilize this extremely valuable information provided by the customer's product selections at the point in time where this information is most valuable. Whether the incentives are printed dynamically or are pre-printed and affixed to the product that is selected, the act of providing the incentive based in whole or in part on the product selection and before the point of sale is a powerful tool for affecting in-store customer behavior.

[0020]  Although the particular examples provided herein are directed to retail grocery stores with conventionally-defined specialty printing departments, it should be understood that the invention is broadly applicable to other environments. For example, department stores may provide an opportunity for label couponing as products are selected in one department to provide incentives to use other departments. Also, specialty departments may be flexibly defined to include any product selection point where it is practical for the retailer to print a label with appropriate incentives in accordance with the present invention prior to the point-of-sale.

[0021]  FIG. 1 shows an exemplary retail environment having a number of specialty departments. Each specialty department is represented by one or more terminals 103 that include label printing provided by a scale or other department-specific mechanism. For example, the deli department typically has a scale and label printer. A pharmacy department has printers for prescription labels and drug information sheets that are specific to the particular transaction. These systems may be stand-alone, or may be coupled to one or more centralized data possessing systems such as server 102 through an in-store network 101. Network 101 may comprise a local area network (LAN) or wide area network (WAN) of any topology, and may be entirely private or involve public communication channels such as the Internet. All or part of network 101 may be implemented by wireless links.

[0022]  In each specialty department 103, a customer selects products and/or services that are provided by the retailer. For example, a meat department will provide a customer-selected quantity of a customer-selected product. In a deli department, a wide variety of goods may be selected. Significantly, these customer selections are made before the customer reaches checkout 105. Hence, after the product selection the customer remains in the store to continue shopping.

[0023]  The present invention is readily adapted to various styles of label printers and label media. The particular examples herein show single sided, single ply label printing media. However, dual side printing is easily implemented and may be especially useful when coupons are pre-printed. Moreover, coupons may be printed on multi-ply paper such that the pre-printed coupons appear underneath the product identification label. A variety of label printing devices are used at centralized packaging and distribution sites as well. The present invention is readily adapted to operate with any printing system in the distribution chain of a product where a label/coupon can be printed or applied to the packaging with knowledge of some characteristic feature of the product that is being labeled. For example, when meat, cheese, and other perishable products are labeled, the labeling systems are aware of what the product is, the product grade, the package size, use-by dates, and a variety of other kinds of

US 2003/0218330 A1

3

Nov. 27, 2003

information that are unique to the particular package being labeled. These characteristics are effective shopping behavior indicators because, eventually, a consumer will select the particular package based on some or all of these characteristics. Hence, a coupon or other incentive can be applied to the package based on these characteristics in a way that is responsive to the customer selection criteria, even before the customer has made the selection. The various unique characteristics of a particular package can be used to anticipate the customers desires, needs and intentions which are in turn used to select a particular incentive to be applied to that package.

[0024] By way of a simple example, a consumer that selects a ten pound package of hamburger patties likely has different shopping intentions than another consumer that selects a one pound package of loose ground beef. One might anticipate that the first consumer is planning a large barbeque while the second consumer is shopping for everyday needs. This anticipatory knowledge is used to select the coupons applied to the package so as to provide incentives for other products that would be used by the consumer given this anticipatory knowledge of the consumers' shopping intentions. In this manner, pre-printed coupons provided after the customer's selection. These and similar modifications are within the scope of the present invention.

[0025] The present invention is particularly useful in affecting in-store consumer behavior. The present invention recognizes that incentives provided at the point of customer selection, yet before the customer reaches the point of sale to consummate the purchase, provide a unique method to monitor and affect in-store customer behavior. Based on the product selection, the terminal in the specialty department queries an incentive database to identify incentives that are associated with the customer's product selection. In many cases, there may be a pool of incentives that are available, and processes implemented in the terminal select one or more incentives from the pool. The selected incentives are implemented as printed coupons. Preferably, the coupons are printed integrally with pre-existing label printing processes so that little overhead is incurred to provide the coupons.

[0026] The incentive database comprises information about available manufacturer or retailer sponsored incentives and implements an association between products and incentives. A given product may be associated with one or more incentives. Similarly, a given incentive may be associated with one or more products.

[0027] The incentive database may be maintained locally in each terminal, but is preferably implemented in a shared resource such as server 102. In particular embodiments, a fixed number (e.g., three) of coupons are printed for any product selection. Where more than the fixed number of incentives are associated with the product selection, a round-robin or random process may be used to identify the fixed number of incentives that will be printed as coupons. The coupons may be pre-printed on the tape used to print the label, in which case the selection of which coupons are associated with a particular label is pre-established. Alternatively, the present invention may be implemented by mixing pre-established or pre-printed coupons with dynamically generated coupons. For example, the label tape may be pre-printed with coupons for a particular product type, and the discount amount filled in during the label printing process based on the particular customer selection.

[0028] FIG. 2 shows an exemplary label coupon 200 in accordance with the present invention. A label coupon 200 includes a product selection information portion 201 that contains information relevant to the particular customer's selections. For example, this information may include a product name, brand name, weight, quantity, unit price, shelf life information, and the like. Additionally, each label comprises one or more label coupons implementing incentive offers for selected products. The selected products are preferably based upon the customer selected product, and are preferably associated with complementary goods and/or services. The coupons may implement incentives for manufacture goods and/or services, or client goods (i.e., house brand) goods and/or services.

[0029] The selection of which goods and/or services are complementary to a given customer product selection is left to the manufacturer, retailer, and marketing organizations. The association of a given incentive to a given product may change at any time. Moreover, other criteria may be taken into account in selecting a particular set of incentives to implement (i.e., print) for a particular product selection instance. For example, customer shopping history, previously selected products, customer demographics, or other information may be taken into account in the selection of incentives from the pool of available incentives associated with a particular customer product selection. This information may be supplied by using a shopping card or loyalty card, for example, or by any other available customer identification means such as smart cards, bank check information, biometrics, or the like in combination with customer profile data or database. Also, the incentives may be based on a variety of criteria related to the particular customer selection. For example, a different set of coupons may be printed for a customer selecting ten pounds of hamburger patties (suggesting a large picnic) than would be provided to a customer selecting one pound of hamburger patties (suggesting a simple family meal).

[0030] In one embodiment, each coupon is printed with a barcode indicator that can be scanned at the register 105 for redemption. Coupons that are used will be matched against purchased items in a conventional manner. Coupons that are not used can be logged for analysis to determine in real time whether a particular incentive is having a desired affect on customer behavior.

[0031] Coupons may be implemented as conventional coupons with a specified expiration date, or may be specified to expire upon this shopping session. Allowing coupons to extend to subsequent shopping sessions encourages store loyalty. Providing for immediate coupon expiration encourages specific customer behavior, and allows resources allocated to the coupon to be reallocated to existing shoppers.

[0032] Although the invention has been described and illustrated with a certain degree of particularity, it is understood that the present disclosure has been made only by way of example, and that numerous changes can be resorted to by those skilled in the art without departing from the spirit and scope of the invention, as hereinafter claimed. For example, coupons are now provided in printed form, but the present invention is readily extended to non-paper coupon types such as might be implemented with RF ID tags or the like by programming label coupons into the label tag that accompanies the product.

4

We claim:

1. A system for providing an incentive in a retail store comprising:

defining an incentive that is based in part on one or more characteristics of a specific product;

applying the incentive to the specific product;

providing the incentive to a shopper at a point after the shopper has selected the specific product and before a point of sale.

2. The system of claim 1 wherein the incentive is printed integrally with a product identification/quantity/pricing label applied to the specific product wherein the label is otherwise used to indicate specific information about the specific product.

3. The system of claim 1 wherein the incentive comprises an incentive to buy a product and/or service that complementary to the specific product selected by the shopper.

4. The system of claim 1 wherein the selected incentive comprises an incentive to buy a product and/or service that is different from the specific product selected by the customer.

5. The system of claim 1 wherein the incentive is printed before customer has selected the specific product from the specialty department location and made available to the shopper after the specific product is selected.

6. The system of claim 1 wherein the incentive is provided on a label that is printed at a centralized packaging site and the incentive is based at least in part upon some quantitative and/or qualitative characteristic of the specific product.

7. A product label for attaching to a package containing a product, the product label comprising:

a product information portion; and

a coupon having an incentive offer wherein the incentive offer is chosen based upon at least one characteristic feature of the product contained within the package, wherein the at least one characteristic feature is one that is used by a shopper to select the package.

8. The product label of claim 7 wherein the incentive offer is selected to complement the at least one characteristic feature that is sued by the shopper to select the package.

9. A method for providing an incentive within a retail environment comprising:

identifying shopping behavior indicators comprising information related to a specific customer product selection, the information selected from the group

consisting of: product type, name, brand, quantity, grade, price per unit, UPC, weight, source, and shelf life;

identifying one or more incentive offers associated with the shopping behavior indicators; and

providing the identified incentive offer after a customer has selected a specific product package and before the point of sale.

10. The method of claim 9 wherein the information is selected to reveal some aspect of current customer shopping intentions.

11. The method of claim 9 wherein the act of providing the incentive is based upon supplemental information in addition to the shopping behavior indicators.

12. The method of claim 11 wherein the supplemental information comprises customer shopping history.

13. The method of claim 11 wherein the supplemental information comprises previously selected products.

14. The method of claim 11 wherein the act of providing the incentive offer comprises printing a coupon in a central packaging location and attaching the printed coupon to the product package.

15. The method of claim 11 wherein the specific customer product selection comprises a packaged meat product, and the act of providing the incentive offer comprises printing a coupon in a central meat packaging location and attaching the printed coupon to the product package before the product package is presented to the customer.

16. A method for implementing a marketing incentive program comprising:

within a retail environment, after a product selection has been made but before a product purchase has been completed, providing an incentive coupon based upon the product selection but for goods and/or services different from that of the product selection.

17. The method of claim 16 wherein the act of providing an incentive coupon is based upon supplemental information in addition to the product selection.

18. The method of claim 16 wherein the supplemental information comprises customer shopping history.

19. The method of claim 16 wherein the supplemental information comprises previously selected products

20. The method of claim 16 wherein the supplemental information comprises customer demographics.

*   *   *   *   *

# Exhibit C

## MUTUAL NONDISCLOSURE AGREEMENT

This Agreement is made this _January 28th_, 2003 by and between Hobart Corporation, a Delaware Corporation, located at 701 South Ridge Avenue, Troy, Ohio 45374 ("HOBART") and _Lawrence R. Mortimer_, having a principal place of business at _Label $ Dollars_ ("COMPANY")

    Whereas, Hobart manufactures commercial food preparation equipment; and

    Whereas, _Label $ Dollars_ is engaged in the business of midwestern and business systems service provider specializing in Scale Management Systems; and

    Whereas, _Label $ Dollars_ and Hobart are considering a possible business relationship and desire to proceed with investigation and/or negotiation related thereto; and

    Whereas, _Label $ Dollars_ and Hobart are in possession of trade secrets, technology, know-how and other confidential information relating to coupon label and redemption businesses and business interests ("Confidential Information") and said _Label $ Dollars_ and Hobart may find it desirable and necessary to exchange such Confidential Information during the course of negotiations

Now therefore, in consideration of the mutual covenant contained herein, the parties agree as follows:

    1   _Label $ Dollars_ and Hobart each agree to refrain from distributing, disclosing or disseminating the Confidential Information of the other party (the "disclosing party") which is disclosed to them (the "receiving party") in any manner to any person or entity except the receiving party's employees, consultant and agents who have a need-to-know and who will be obligated to maintain the confidentiality of such information in a manner consistent with that provided under this Agreement

    2   The Confidential Information shall be written and, at the time of disclosure to the receiving party, be clearly and conspicuously marked or otherwise clearly identified as such by the disclosing party

    3   All drawings and other documents, any copies thereof, or things or samples which embody the Confidential Information of a party shall remain the property of that party and will be promptly returned to that party upon that party' request

    4   The restrictions and confidentiality obligations set forth in this Agreement shall not apply to the disclosing party's Confidential Information which:

        a   is disclosed pursuant to the advance written authorization of the disclosing party;

        b   is lawfully disclosed to the receiving party by a third party without any confidentiality obligation;

        c   is known by the receiving party prior to its receipt by the disclosing party; or

        d   is lawfully and independently developed by the receiving party without use of the Confidential Information disclosed by the disclosing party;

    5   Neither party shall use the Confidential Information of the other for any purpose other than to effectuate the investigative purpose of this Agreement

    6   No license under any patents or other proprietary rights is granted or implied by conveying Confidential Information nor shall other information, which may be transmitted, constitute any representation, warranty, assurance, guarantee or inducement with respect to the infringement of patents or other rights of third parties

    7   Neither party shall make any press release or other public utterances of any kind regarding this agreement, the information received as part of this agreement or the contents of this agreement without prior written consent of the other party

x    Each party upon written request from the other party shall return all drawing and other documents, including any copies or summaries thereof, or other tangible forms, which embody any Confidential Information of the requesting party.

9    Addresses for notice and requests are

Hobart Corporation
701 South Ridge Avenue
Troy, OH 45374

LABEL# UoMatts
736-Evening Star Ct.
Castle Rock, Co 80104

16    Each party's obligation to maintain the confidentiality of the Confidential Information of the other party shall expire three (3) years after the date of this Agreement, provided that any obligations hereunder relating to source code and trade secrets of the other party shall be perpetual

1    This Agreement is specifically enforceable without proof of monetary damages. In any action to enforce this Agreement, the prevailing party shall be entitled to recover, in addition to all other relief, its reasonable attorney's fees, costs and expenses incurred in such action. This Agreement shall be construed and enforced in accordance with the laws of the state of Ohio without reference to Ohio's choice of law principles
LABEL # Dollars irrevocably consents to the jurisdiction of the court of the State of Ohio and any United States District Court in Ohio

In witness thereof the parties have hereto executed this agreement as of the date first written above

HOBART CORPORATION
BY
TITLE  General Manager
DATE  January 28, 2003
WITNESS

(COMPANY)
BY
TITLE  President/CEO
DATE  January 28, 2003
WITNESS

# Exhibit D



US007099038B2

(12) **United States Patent**
Schuller

(10) **Patent No.:** US 7,099,038 B2
(45) **Date of Patent:** Aug. 29, 2006

(54) **METHOD AND SYSTEM FOR CONTROLLING MESSAGES PRINTED BY AN IN-STORE LABEL PRINTER AND RELATED LABEL STRUCTURE**

(75) Inventor: **Robert J. Schuller**, Troy, OH (US)

(73) Assignee: **Premark FEG L.L.C.**, Wilmington, DE (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **10/967,799**

(22) Filed: **Oct. 18, 2004**

(65) **Prior Publication Data**

US 2005/0055637 A1   Mar. 10, 2005

**Related U.S. Application Data**

(63) Continuation of application No. 10/389,474, filed on Mar. 14, 2003, which is a continuation of application No. 09/663,285, filed on Sep. 15, 2000.

(51) **Int. Cl.**
*G06F 13/00* (2006.01)

(52) **U.S. Cl.** .................................. 358/1.18; 428/40.1

(58) **Field of Classification Search** .............. 358/1.18; 428/40.1
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| 2,420,045 A | 5/1947 | Krug |
| 3,711,683 A | 1/1973 | Hamisch, Sr. |
| 3,757,037 A | 9/1973 | Bialek |
| 3,994,089 A | 11/1976 | Schwartz |

| | | |
|---|---|---|
| 4,188,250 A | 2/1980 | Grass |
| 4,188,251 A | 2/1980 | Grass et al. |
| 4,188,427 A | 2/1980 | Grass |

(Continued)

FOREIGN PATENT DOCUMENTS

EP          0362075          4/1990

(Continued)

OTHER PUBLICATIONS

Ishida, *AC-3000 Series* brochure, 6 pages, published at least as early as Nov. 26, 1996.

(Continued)

*Primary Examiner*—David Moore
*Assistant Examiner*—Alan Rahimi
(74) *Attorney, Agent, or Firm*—Thompson Hine LLP

(57) **ABSTRACT**

A method for selectively printing different messages on labels printed by an in-store scale involves providing an in-store scale including a label printing mechanism with a supply of labels and a communications link for receiving information from a site external to the store. The scale label printing mechanism is configured in a first state, and, during the first state, simultaneous printing of two types of information on a first label takes place. In particular, both (i) product information for a specified product to which the first label will be applied and (ii) a first message pertaining to a product which is different than the specified product to which the first label will be applied, are printed on the first label. The in-store scale receives a message control signal via the communications link which configures the scale label printing mechanism in a second state. During the second state, simultaneous printing of two types of information on a second label takes place. In particular, both (i) product information for a specified product to which the second label will be applied and (ii) a second message, different than the first message, and also pertaining to a product which is different than the specified product to which the second label will be applied, are printed on the second label.

**16 Claims, 5 Drawing Sheets**



**US 7,099,038 B2**
Page 2

### U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| 4,323,608 A | 4/1982 | Denny et al. |
| 4,423,486 A | 12/1983 | Berner |
| 4,457,539 A | 7/1984 | Harnisch, Jr. |
| 4,598,789 A | 7/1986 | Iwasaki et al. |
| 4,674,041 A | 6/1987 | Lemon et al. |
| 4,685,702 A | 8/1987 | Kazuharu ................... 283/81 |
| 4,723,212 A | 2/1988 | Mindrum et al. |
| 4,821,186 A | 4/1989 | Munakata et al. |
| 4,895,747 A | 1/1990 | Birkholz et al. ........... 428/40.9 |
| 4,901,237 A | 2/1990 | Hikita et al. |
| 4,901,457 A | 2/1990 | Chandler |
| 4,910,672 A | 3/1990 | Off et al. |
| 4,928,229 A | 5/1990 | Teraoka et al. |
| 4,929,818 A | 5/1990 | Bradbury et al. |
| 4,932,485 A | 6/1990 | Mori |
| 5,083,638 A | 1/1992 | Schneider |
| 5,172,936 A | 12/1992 | Sullivan et al. |
| 5,173,851 A | 12/1992 | Off et al. |
| 5,185,695 A | 2/1993 | Pruchnicki |
| 5,200,889 A | 4/1993 | Mori |
| 5,329,713 A | 7/1994 | Lundell |
| 5,350,612 A | 9/1994 | Stern et al. |
| RE34,915 E | 4/1995 | Nichtberger et al. |
| 5,439,721 A | 8/1995 | Pedroli et al. |
| 5,560,718 A | 10/1996 | Furuya |
| 5,578,797 A * | 11/1996 | Hewitt et al. ................... 177/5 |
| 5,612,868 A | 3/1997 | Off et al. |
| 5,642,485 A | 6/1997 | Deaton et al. |
| 5,649,114 A | 7/1997 | Deaton et al. |
| 5,676,783 A | 10/1997 | Samonides |
| 5,758,328 A | 5/1998 | Giovannoli |
| 5,774,868 A | 6/1998 | Cragun et al. |
| 5,832,457 A | 11/1998 | O'Brien et al. |
| 5,857,175 A | 1/1999 | Day et al. |
| 5,865,470 A | 2/1999 | Thompson |
| 5,866,181 A | 2/1999 | Hill |
| 5,887,271 A | 3/1999 | Powell |
| 5,892,827 A | 4/1999 | Beach et al. |
| 5,895,075 A | 4/1999 | Edwards |
| 5,926,795 A | 7/1999 | Williams |
| 5,943,654 A | 8/1999 | Goodwin, III et al. |
| 5,956,877 A | 9/1999 | Raasch et al. |
| 5,974,396 A | 10/1999 | Anderson et al. |
| 5,974,399 A | 10/1999 | Giuliani et al. |
| 6,009,411 A | 12/1999 | Kepecs |
| 6,014,634 A | 1/2000 | Scroggie et al. |
| 6,026,370 A | 2/2000 | Jermyn |
| 6,026,373 A | 2/2000 | Goodwin, III |
| 6,041,309 A | 3/2000 | Laor |
| 6,042,149 A | 3/2000 | Roshkoff |
| 6,047,263 A | 4/2000 | Goodwin, III |
| 6,055,573 A | 4/2000 | Gardenswartz et al. |
| 6,067,524 A | 5/2000 | Byerly et al. |
| 6,076,069 A | 6/2000 | Laor |
| 6,138,911 A | 10/2000 | Fredregill et al. |
| 6,151,586 A | 11/2000 | Brown |
| 6,151,587 A | 11/2000 | Matthias |
| 6,240,394 B1 | 5/2001 | Uecker et al. |
| 6,270,871 B1 | 8/2001 | Scholz et al. |
| 6,278,979 B1 | 8/2001 | Williams |
| 6,282,516 B1 | 8/2001 | Giuliani |
| 6,287,031 B1 | 9/2001 | Willis |
| 6,304,849 B1 | 10/2001 | Uecker et al. |
| 6,307,958 B1 | 10/2001 | Deaton et al. |
| 6,321,210 B1 | 11/2001 | O'Brien et al. |
| 6,334,108 B1 | 12/2001 | Deaton et al. |
| 6,351,735 B1 | 2/2002 | Deaton et al. |
| 6,576,315 B1 | 6/2003 | Treleaven et al. |
| 6,613,410 B1 | 9/2003 | Sellars |
| 2003/0205412 A1 | 11/2003 | Hewitt et al. |

### FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| EP | 0837411 A1 | 4/1998 |
| EP | 0853290 A2 | 7/1998 |
| EP | 0853290 A3 | 1/1999 |
| EP | 01116328 | 11/2003 |
| FR | 2741987 | 6/1997 |
| JP | 60193824 | 10/1985 |
| JP | 63144667 | 6/1988 |
| JP | 63178875 | 7/1988 |
| JP | 63191370 | 8/1988 |
| JP | 3138171 | 6/1991 |

### OTHER PUBLICATIONS

Hobart Food Equipment, "CLA Compact Label Applier", For Trayed Self-Service Meat, Poultry, Fish and Produce, May 1993.
Hobart Food Equipment, "Hilite Label Printer & Applier", For Printing and Applying Merchandising Labels, May 1988.
Hobart Food Equipment, "Ultima 2000 PLU Prepack Weighing System", The Hobart Ultima 2000 PLU Prepacking Weighing System Provides Merchandising, Flexibility, Nutritional and Text Printing and Is Very Simple To Use, Mar. 1993.
Hobart, "ULTIMA 2000", The ultimate pre-pack scale/printer merchandising system, Dec. 1992.
Hobart, "Weigh/Wrap/Label Systems", Aug. 1999.

* cited by examiner



FIG. 1



FIG. 2



FIG. 3



FIG. 4A

FIG. 4B



FIG. 5

FIG. 6



FIG. 7A          FIG. 7B



FIG. 8



FIG. 9A
(PRIOR ART)

FIG. 9B
(PRIOR ART)



FIG. 10
(PRIOR ART)

US 7,099,038 B2

1

## METHOD AND SYSTEM FOR CONTROLLING MESSAGES PRINTED BY AN IN-STORE LABEL PRINTER AND RELATED LABEL STRUCTURE

### CROSS-REFERENCE TO RELATED APPLICATIONS

This application is a continuation of U.S. application Ser. No. 10/389,474, filed Mar. 14, 2003, which in turn is a continuation of U.S. application Ser. No. 09/663,285, filed Sep. 15, 2000.

### FIELD OF THE INVENTION

The present invention relates generally to in-store printer mechanisms utilized for printing labels applied to products and to label structures utilized by such printer mechanisms, and more particularly, to a method and system for controlling messages printed on labels by an in-store scale for increasing marketing and promotional opportunities.

### BACKGROUND OF THE INVENTION

The perishable foods sections of most supermarkets and grocery stores such as the meat department, bakery, deli and produce department, typically include one or more in-store printers for printing labels with item name, weight or count, and price information. The labels are then applied to the packaged items. Many such printers are provided as part of in-store scales or systems including scales. FIG. 9A represents a front surface view of a typical pre-printed label 200 which may be utilized in the scale. The label 200 is often times pre-printed with store-specific information such as the store name and/or logo in a predetermined portion 202 of the label and a remaining portion 204 of the label is left blank to permit the scale printer to print product name, weight, price information, and product bar code in such space. FIG. 9B represents a front surface view of another label 210 which has been used in the past and which is pre-printed with store-specific information such as the store name and/or logo in a predetermined portion 212 and is also pre-printed in label portion 214 with an advertisement message/logo which may relate to any other product sold in the store. Remaining portion 216 is left blank to permit the scale printer to print product name, weight, price information, and product bar code in such space. The problem with the pre-printed advertisement is that it is permanent and cannot be adjusted at the store.

Increasingly, in-store equipment such as scales/scale systems may include a communications link for receiving information externally of the store. As used herein the term scale system refers to any scale device or any larger device which includes a scale, such as a weigh/wrap machine. For example, prior art scale systems exist in which pricing information in the goods database is updated remotely from a central location so that all related stores in a chain use the same pricing scheme. Chain personnel can also use communications links with in-store scale systems to monitor scale status/function. Still further, prior art in-store scale systems exist which are capable of printing two labels, one which includes the product and price information and another which prints a marketing message. An example of such a prior art system is illustrated in FIG. 10 where a store 300 is shown and external site 302 is shown. A scale system 304 including a controller 306 and associated printer 308 is located in the store 302, along with a second printer 310

2

which is connected to controller 306 for control thereby. The controller 306 is also connected via communications link 312 to a computer 314 at external site 302. In the illustrated system, computer 314 has been used to control pricing information used by scale 304 for printing on a first label by printer 308, and to also control merchandising messages printed on a second, separate label by printer 310, where the pricing information printed by printer 308 and the merchandising information printed by printer 310 related to the same product. Examples of merchandising messages printed on the second label by printer 310 include "Great For The Grill" or "100% Pure Ground Beef" or "50¢ Off". Such prior art systems have also been used to print similar merchandising messages, regarding the product to which a pricing label is applied, on the pricing label itself.

Product manufacturers, distributors, advertisers and store operators are continually looking for new and improved ways to market and advertise products within the store. Accordingly, given the number of labels printed on a daily basis by such scales, and the fact that the packages containing such labels are typically placed directly in front of consumers or into the consumer's hands, it would be desirable to utilize such scales to deliver marketing and promotional messages for numerous products in a controlled manner.

In the label printing field it is also known to provide coupons on labels which are applied to products. For example, U.S. Pat. No. 5,578,797 provides a label structure which includes both a product bar code and a coupon bar code on a front surface of the label. The coupon portion of the label is designed to be torn off by the customer. However, some customers may not tear off the coupon. In such cases, this label structure can be problematic because checkout scanners can be confused by the presence of two bar codes on the label. Accordingly, it would also be desirable to provide a label structure which provides coupon capability while overcoming the aforementioned problem.

### SUMMARY OF THE INVENTION

In one aspect of the present invention, a method for selectively printing different messages on labels printed by an in-store scale involves providing an in-store scale including a label printing mechanism with a supply of labels and a communications link for receiving information from a site external to the store. The scale label printing mechanism is configured in a first state and, during the first state, simultaneous printing of two types of information on a first label takes place. In particular, both (i) product information for a specified product to which the first label will be applied and (ii) a first message pertaining to a product which is different than the specified product to which the first label will be applied, are printed on the first label. The in-store scale receives a message control signal via the communications link which configures the scale label printing mechanism in a second state. During the second state, simultaneous printing of two types of information on a second label takes place. In particular, both (i) product information for a specified product to which the second label will be applied and (ii) a second message, different than the first message, and also pertaining to a product which is different than the specified product to which the second label will be applied, are printed on the second label. Thus, the method enables messages imprinted on labels to be selectively controlled by parties such as the manufacturer or distributor of the pre-determined product, or an advertising agency charged with increasing sales of the predetermined product.

US 7,099,038 B2

3

In one variation of the method, the first and second messages relate to coupon discount amounts for the predetermined product. In connection with this variation, another aspect of the invention provides a label structure including a base paper having front and rear surfaces, at least one pre-printed information region toward the rear surface of the base paper. The pre-printed information region is formed by an adhesive layer adjacent the rear surface of the base paper, an adhesive deadening layer overlaying the adhesive layer in a defined area, and a layer of printed information overlaying at least portions of the adhesive deadening layer. The layer of printed information may include a coupon bar code which can be tied to the coupon discount information to be printed on the front surface of the label. Because the coupon bar code is provided on the rear surface of the label, it will face inward against a package and will not cause confusion with the product bar code on the front surface of the label during scanning, in the event the customer does not detach the coupon before checkout.

Still a further aspect of the invention provides a method for controlling an in-store label coupon printing system involves providing an in-store label printing mechanism including a controller and associated memory, and a user input device. A supply of labels is also provided for the in-store printing mechanism, each label including a pre-printed coupon bar code on a rear surface portion thereof. The user input device is selectively utilized to establish a coupon message to be printed on a front surface of the labels by the in-store printing mechanism. A stored discount amount associated with the coupon bar code is provided in at least one of an in-store point-of-sale computer system memory and a store computer system memory. The stored discount amount is adjusted as needed to coincide with changes made in the coupon message printed by the in-store label printing mechanism.

BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a schematic diagram of one embodiment of a label printing system in accordance with the present invention;

FIG. 2 is a schematic diagram of a scale mechanism including a label printer;

FIG. 3 is a flowchart of steps according to one embodiment of a method of the present invention;

FIGS. 4A and 4B show front and rear surface views of one embodiment of a label structure according to the invention;

FIG. 5 is a cross sectional view along line 5—5 of FIG. 4A;

FIG. 6 is a side view of a supply roll of labels;

FIGS. 7A and 7B show front and rear surface views of a printed label;

FIG. 8 is a perspective view of a labeled package assembly;

FIGS. 9A and 9B show front and rear surface views of prior art labels; and

FIG. 10 is a schematic diagram of a prior art system.

DETAILED DESCRIPTION OF THE EMBODIMENTS

Referring to drawing FIG. 1, a schematic diagram of a system 10 useful in carrying out the present invention includes a store 12, a communications path 14, and a retail headquarters, product manufacturer, distributor or advertising agency location 15. The store includes scale system 16 which is connected to the communications path 14 via

4

communications link 18 for receiving externally generated messages, such as those generated by a computer 20 at location 15. The store 12 also includes a store computer system 22 which may be used for tracking and maintaining inventory and a point-of-sale (POS) computer system 24 which is utilized for customer checkout and typically includes a plurality of bar code scanners. Communications link 26 between the scale system 16 and POS system 24 may be provided and communications link 28 between the store computer system 22 and scale system 16 may also be provided. While the use of communications link 18 to enable the scale to receive external messages is preferred, it is recognized that the scale could receive such externally generated messages via indirect links such as a communications link comprised of link 30, store computer system 22 and link 28. Links 18, 26, 28 and 30 are preferably hardwired links such as typical telephone line or coax links, but it is recognized that wireless links could also be utilized. Communications path 14 may preferably be an Internet link but might also be a dedicated type link. In either case the path may be formed by any one of hard-wired, fiber-optic or wireless type arrangements, and combinations of the same.

As shown in FIG. 2, the scale system 16 includes a controller 40 with an associated communications interface 42. The controller 40 typically includes associated memory for storing firmware, software and data as needed. At least one load cell and associated circuitry 44 are provided for delivering weight information to the controller 40. The controller 40 is connected for controlling a display 46 such as an LED or LCD, and also for controlling a printing mechanism portion which includes print head 48, label supply 50, and mechanism such as a motor drive 48 (not shown) for moving label stock past the print head 48 along a predefined path 52. A user input device 54 such as a plurality of user input keys or a touch screen arrangement associated with the display 46 enables a user to input information such as the product type and cost per pound or product code, as well as other information, to the controller 40.

Scale system 16 may be representative of the typical scale system utilized in one or more of the perishables departments of a supermarket or grocery store for printing labels which are then applied to products. For example, stand alone scales in the deli department print labels which are typically applied to lunch meats, cheeses, side salads and the like. Such scales can also be utilized in the produce department or meat and fish departments. Weigh/wrap type machines are also commonly used. Regardless of where the scale system is located, the present invention enables it to be utilized in a new and improved manner for selective control of messages printed on labels. In particular, referring to the flow chart 60 of FIG. 3, exemplary steps in one embodiment of the message control method of the present invention are shown. It is assumed at initial step 62 that the in-store scale system 16 including label printing mechanism 48, supply of labels 50, and communications link 18 for receiving information from a site external to the store is configured in a first state. At step 64 a specified product (e.g. lunch meat) is weighed and price calculated. At step 66 simultaneous printing of two types of information on a first label takes place. In particular, both (i) product information (name and price) for the specified product to which the first label will be applied and (ii) a first message pertaining to a product (e.g. potato chips) which is different than the specified product, are printed on the first label. Thereafter, at step 68 a stand by for the next weigh and print is indicated. If there is no change from the first state of the scale system printer

US 7,099,038 B2

5

then path 70 will be followed and the next label will be simultaneously imprinted with specified product information and the first message. However, if there is a change from a first state of the scale printer to a second state of the scale system printer, then path 72 will be followed and the next scale weigh operation will take place at step 74 and at step 76 simultaneous printing of two types of information on a second label takes place. In particular, both (i) product information (name and price) for the specified product to which the second label will be applied and (ii) a second message, different than the first and pertaining to the a product which is different than the specified product, are printed on the second label. A new standby state 78 is then shown, with optional paths 80 and 82 according to whether a state change in the scale system printer occurs.

As used herein, the terminology "simultaneous printing" of information on a label refers to printing which takes place on the label as it passes by the printhead in a single pass, and encompasses, without limitation, both side-by-side printing of information and printing first information on a first portion of the label as the first portion passes by the print head and, subsequently, printing second information on a second portion of the label as the second portion of the label passes by the print head.

The state change of the scale system printer may be controlled by receipt by the in-store scale of a message control signal via the communications link which configures the scale label printer in a second state. In one embodiment the scale 16 includes a stored table of selectable message options, each including an associated message indicator as shown in representative Table I below:

TABLE I

STORED MESSAGE OPTIONS TABLE

| Message Indicator | Message Option |
| --- | --- |
| 0000 | 50 Cents Off - Expires MM/DD/YY |
| 0001 | 25 Cents Off - Expires MM/DD/YY |
| 0010 | 10 Cents Off - Valid MM/DD/YY - MM/DD/YY |
| 0011 | 2 For 1 Special - Valid MM/DD/YY - MM/DD/YY |
| 0100 | Try New (BRAND) Chips - Now With Less Fat |
| 0101 | Try (BRAND)'s New Barbecue Style |

In this arrangement, the scale system also includes a memory location including a selected message indicator. Thus, in state 1 of the example described above the stored selected message indicator could be "0000" in which case during the printing operation of step 66 the scale controller references stored message options Table I and retrieves the "50 Cents Off—Expires MM/DD/YY" message for printing. The control message received via the communications link to cause the state change will be another message indicator such as "0010" which in turn is automatically and immediately overwritten into the selected message indicator memory location. Thereafter, during the printing operation of step 76 the scale controller references stored message options Table I and retrieves the "10 Cents Off—Valid MM/DD/YY—MM/DD/YY" message for printing. Alternatively, the control message received via the communications link may include a new message indicator and associated time or date at which such new message indicator is to be utilized as the selected message indicator. In such cases the data structure storing the selected message indicator may also comprise a table such as Table II below:

6

TABLE II

SELECTED MESSAGE INDICATORS

| Start Date | Selected Message Indicator |
| --- | --- |
| MM/DD/YY | 0000 |
| MM/DD/YY | 0010 |
| MM/DD/YY | 0100 |

In this arrangement the scale system controller is configured to utilize a running time clock to determine when to change the scale system printer state and begin using a new message indicator. Thus, externally generated message control signals can be utilized to establish a future message selection pattern as desired.

Utilizing the stored message table technique enables the store owner/operator and the outside entity (product manufacturer, distributor or advertiser) to agree upon permissible messages in advance. However, an alternative embodiment in which the scale system merely stores the message to be printed for state 1 in memory and in which the message control signal received by the scale contains the new message for printing (as opposed to a message indicator) in state 2 is contemplated. Still further, where the stored message table arrangement is utilized, it is possible that the communications link could be utilized to update or revise the stored message table in memory of the scale. In either embodiment, the system and method enables messages printed on labels in the store to be selectively controlled by parties such as chain personnel at retail headquarters, the manufacturer or distributor of the predetermined product, or an advertising agency charged with increasing sales of the predetermined product.

It is recognized that Table I is merely representative of one type of message options table and that others could be utilized. For example, an alternative message options table is set forth below as Table III:

TABLE III

STORED MESSAGE OPTIONS TABLE

| Message Indicator | Message Option - Part 1 | Message Option - Part 2 |
| --- | --- | --- |
| 0000 | 50 Cents Off | Expires MM/DD/YY |
| 0001 | 25 Cents Off | Expires MM/DD/YY |
| 0010 | 10 Cents Off | Valid MM/DD/YY - MM/DD/YY |
| 0011 | 2 For 1 Special | Valid MM/DD/YY - MM/DD/YY |
| 0100 | Try New (BRAND) Chips | Now With Less Fat |
| 0101 | (BRAND)'s Barbecue Style | Preferred 2 To 1 |

Notably, Table II includes stored message option parts which the controller can retrieve for printing at different locations on the label. It is also contemplated that a three-dimensional message table or map could be utilized. Such a table could store messages as a function of message indicator and specified product to which a label is to be applied, so that the message is varied according to selected message indicator and the product to which the label is to be applied. For example, if steak is purchased a message for one product might be printed while if hot dogs are purchased a message for another product might be printed.

As demonstrated by the last two messages in each of Tables I and III, the messages which are selected for printing

7

8

may be non-coupon messages. However, in a preferred arrangement the messages which are selected for printing on labels output by the scale system relate to coupon discount information for the predetermined product. For example, as indicated in Table I above the message may be an amount off, a 2 for 1 type special, or might also be a percent off type coupon discount amount. In this regard, a preferred label structure 90 for use in combination with the message control method is illustrated in front and rear surface views respectively in FIGS. 4A and 4B. Label structure 90 includes a front face 92 having a store name/logo 94 pre-printed thereon, a central region 96 defined by a separation line 98 and a lower region 100 defined by the edges of the label and separation line 102. Separation lines 98 and 102 may be formed by any known means including perforation or other weakening of the base paper. The region between store name/logo 94 and the separation line 102 will be used during a printing operation of the scale system to print name and price information and/or product bar code for the specified product to which the label is to be attached. The region below separation line 102 will be used during a printing operation of the scale system to print the message information for the predetermined product. In this regard, the lower region may include a pre-printed name and/or design element of the predetermined product in region 104, with the selectable message then being printed to the right of region 104.

Where the selectable message is a coupon discount message, the label structure rear surface 110 preferably includes a pre-printed coupon bar code 112 on the lower portion of the label so that when the lower portion of the label is detached, the coupon bar code stays with the coupon message printed on the front side. On the rear side of the region defined by separation line 98, other pre-printed information may be provided such as recipe type information. Where the selectable message information is a coupon discount message, a further step is in order to correlate the change in coupon discount information to the coupon bar code which will be scanned at check-out by the P.O.S. computer system 24 (FIG. 1). One or both of the P.O.S. computer system 24 and the store computer system 22 will include a stored discount amount associated with the coupon bar code 112. When the coupon discount message is changed, the stored discount amount associated with bar code 112 will also need to be changed at some point in the future. Generally, the stored discount amount associated with bar code 112 will be changed at a time corresponding to both the expiration of the valid period for coupons having a first coupon message and the beginning of the valid period for other coupons having a second coupon message. Links 26 and 28 facilitate adjustment of the stored discount amount associated with the coupon bar code 112 as needed. The expiration date of a given coupon discount is printed on the front of the label (see Tables I and III) to prevent problems with customers attempting to use a coupon after the stored amount has been changed.

Referring again to FIGS. 4A and 4B, an important distinction exists between pre-printed information provided on a label and information which is printed by the in-store scale system. In particular, "pre-printed" information exists on the labels when supplied to a store and therefore cannot be changed or modified by the store unless a different label format is chosen/selected or unless an attempt is made to overwrite or black out a pre-printed message on the front of a label. Referring to the cross-sectional view of FIG. 5 the label structure 90 is formed by a base paper 114. Toward the front surface side of the base paper a layer 116 formed by a

thermally sensitive composition is first provided and atop the thermal layer 116 a layer or coating 118 of a sealing composition is provided to prevent loss of the thermal layer 116. Atop the sealing layer 118 an ink-based layer 120 of pre-printed information is provided in those regions where such pre-printing is desired. When indicia 122 (e.g. selectable messages) are printed by the thermal print head of the scale, such messages are formed in the thermal layer 116 but are visible through the clear sealing layer 118. Toward the rear side of the base paper 114 a layer 124 of an adhesive composition is provided for securing the label to a product package. In those regions where pre-printed information is provided on the rear surface of the label 90, the adhesive layer 124 is covered by an adhesive deadening layer 126 so that that portion of the label can be removed from the package easily. The adhesive deadening layer may typically be formed by a layer of white ink applied over the adhesive. An ink-based layer 128 of pre-printed information (e.g. coupon bar code or recipe) is then applied over the adhesive deadening layer. Referring to FIG. 6 a representative supply roll 130 of label structures 90 is shown. The supply roll includes a liner 132 having a silicone release layer 134 applied thereto such that when the adhesive side of label structures 90 is applied to the liner they can be easily removed for dispensing from the scale and application to a product package.

The manufacturing method for producing such label stock involves starting with a wide roll of stock with label material with adhesive side attached to the release surface base paper. The label material is then re-applied to the base paper. The label material is then die cut to form individual labels and length cut to form multiple label supply rolls.

After printing product information and message information on a label as described above, the resulting label structure may be that shown in FIGS. 7A and 7B where front and rear surface portions of a printed label structure 140 are shown. In particular the front surface 142 of printed label structure 140 includes a product bar code 144 thereon as printed by the scale print head. The rear surface 146 of the label structure includes the pre-printed coupon bar code 148. This arrangement eliminates the possibility that the P.O.S. scanners will confuse the two bar codes during check-out. Because the coupon portion of the label might be removed by the consumer prior to check-out, the product bar code 146 on the front surface is preferably positioned at a location spaced from but proximate to a location of the scannable coupon information bar code. In this regard, the term "proximate" is used to refer to a location which results in positioning of the product bar code 142 toward the same side 150 (FIG. 8) of a product package 152 as the coupon bar code 148 when the label is applied to the product package forming a label and package assembly 154.

Although the invention has been described and illustrated in detail it is to be clearly understood that the same is intended by way of illustration and example only and is not intended to be taken by way of limitation.

For example, while a major advantage of the above-described method provides retailers, product manufacturers, distributors and advertisers the ability to selective control messages printed on labels printed in a store, it is recognized that the user input device 54 may be used to selectively control messages as well. Thus, a method for controlling an in-store label coupon printing system is provided which involves providing an in-store label printing mechanism including a controller and associated memory, and a user input device, and providing a supply of labels for the in-store printing mechanism, each label including a pre-printed cou-

9

pon bar code on a rear surface portion thereof. The user input device is selectively utilized to establish a coupon message to be printed on a front surface of the labels by the in-store printing mechanism. A stored discount amount associated with the coupon bar code is provided in at least one of an in-store point-of-sale computer system memory and a store computer system memory. The stored discount amount can be adjusted to coincide with changes made in the coupon message printed by the in-store label printing mechanism.

Further, while the use of a scale system with an associated print head is primarily discussed herein, it is recognized that other in-store label printing mechanisms could also be used for selective control of messages printed on labels.

Accordingly, the spirit and scope of the invention are to be limited only by the terms of the appended claims.

What is claimed is:

1. A method for distributing a coupon and a product pricing label, the method including the steps of:

utilizing a supply of labels in the form a liner having a release surface, a plurality of labels removably attached to the release surface of the liner and each including a coupon portion, a product pricing portion, a front side and a read side, the coupon portion having a pre-printed coupon bar code located at the rear side thereof to face toward the release surface of the liner, the pre-printed coupon bar code relates to a predetermined product and the front side of the coupon portion includes pre-printed information regarding the predetermined product, the front side of the product pricing portion having a pricing region for having price information printed thereon, wherein at least one separation line is formed between the coupon portion and the product pricing portion, wherein the rear side of the coupon portion is adhesive and the rear side of the coupon portion is deadened, wherein the liner and the plurality of labels are formed into a roll;

incorporating the supply of labels into a scale having an associated printer, the scale located in a store;

weighing a food product with the scale;

printing, with the printer of the scale, pricing information for the weighed food product in the pricing region on the product pricing portion of a given label of the plurality of labels;

after the printing step, applying the given label to a package containing the weighed food product while the coupon portion and product pricing portion remain attached to one another, the given label applied such that the pre-printed coupon bar code of the coupon portion faces downward against the package and the given label is held to the package by adhesive at the rear side of the product pricing portion; and

providing the package to a customer in the store.

2. The method of claim 1 including the further step of scanning the pre-printed coupon bar code of the coupon portion of the given label when the coupon portion is removed from the product pricing portion and presented at checkout.

3. The method of claim 1 wherein the scale is located in a perishables department of the store and the food product is a perishable food product.

4. The method of claim 1 wherein the scale is part of a weigh/wrap machine in the store.

5. The method of claim 1 wherein the preprinted information regarding the predetermined product includes a name of the product.

10

6. The method of claim 5 wherein the preprinted information regarding the predetermined product includes a design element of the predetermined product.

7. A method for distributing a coupon and a product pricing label, the method including the steps of:

utilizing a supply of labels in the form a liner having a release surface, a plurality of labels removably attached to the release surface of the liner, a multiplicity of the labels including a coupon portion, a product pricing portion, a front side and a rear side, the coupon portion having a pre-printed coupon bar code located at the rear side thereof to face toward the release surface of the liner, the pre-printed coupon bar code relates to a predetermined product and the front side of the coupon portion includes pre-printed information regarding the predetermined product, the front side of the product pricing portion having a pricing region for having price information printed thereon, wherein at least one separation line is formed between the coupon portion and the product pricing portion, wherein the rear side of the product pricing portion is adhesive and the rear side of the coupon portion is deadened, wherein the liner and labels are formed into a roll;

incorporating the supply of labels into a scale having an associated printer, the scale located in a store;

weighing a food product with the scale;

printing, with the printer of the scale, pricing information for the weighed food product in the pricing region on the product pricing portion of a given label of the multiplicity of labels;

after the printing step, outputting the given label from the scale and applying the given label to a package containing the weighed food product while the coupon portion and product pricing portion remain attached to one another, the given label applied such that the pre-printed coupon bar code of the coupon portion faces downward against the package and the adhesive of the product pricing portion holds the given label to the package.

8. The method of claim 7 wherein the package, with the given label applied thereto, is provided to a customer in the store.

9. The method of claim 7 wherein the preprinted information regarding the predetermined product includes a name of the product.

10. The method of claim 7 wherein the preprinted information regarding the predetermined product includes a design element of the predetermined product.

11. A method for distributing a coupon and a product pricing label, the method including the steps of:

utilizing a supply of labels in the form of a liner including a release surface, a plurality of labels removably attached to the release surface of the liner and including a coupon portion, a product pricing portion, a rear side and a front side, the coupon portion having a pre-printed bar code located at the rear side thereof to face toward the release surface of the liner, the front side of the product pricing portion including a pricing region for having at least price information printed thereon, at least one separation line between the coupon portion and the product pricing portion, wherein the liner and labels are formed into a roll;

incorporating the supply of labels into a scale having an associated printer;

weighing a food product using the scale;

US 7,099,038 B2

11

printing, with the printer of the scale, pricing information for the weighed food product in the pricing region on the product pricing portion of a given label of the plurality of labels;

after the printing step, applying the given label to a package containing the weighed food product while the coupon portion and product pricing portion remain attached to one another, the given label applied with the pre-printed bar code facing downward against the package and such that adhesive of the product pricing portion of the given label holds the label to the package but the coupon portion is removable from the package by separation from the product pricing portion along the separation line; and

providing the package to a customer.

12. The method of claim 11 including the further step of scanning the pre-printed bar code of the coupon portion of the given label when the coupon portion is removed from the product pricing portion and presented at checkout.

13. The method of claim 11 wherein the scale is located in a perishables department of the store and the food product is a perishable food product.

14. The method of claim 11 wherein the scale is part of a weigh/wrap machine in the store.

15. A method for distributing a coupon and a product pricing label, the method including the steps of:

utilizing a supply of labels in the form of a liner including a release surface, a plurality of labels removably attached to the release surface of the liner, a multiplicity of the labels each including a coupon portion, a product pricing portion, a front side and a rear side, the coupon portion having a pre-printed bar code pertaining to a specific product, the pre-printed bar code located at the

12

rear side of the coupon portion to face toward the release surface of the liner, the rear side of the coupon portion is deadened, the front side of the coupon port includes a pre-printed name of the specific product and a pre-printed design element associated with the specific product, the front side of the product pricing portion includes a pricing region for having at least price information printed thereon, the rear side of the product pricing portion is adhesive, at least one separation line between the coupon portion and the product pricing portion, wherein the liner and labels are formed into a roll;

incorporating the supply of labels into a scale having an associated printer;

weighing a food product using the scale;

printing, with the printer of the scale, pricing information for the weighed food product in the pricing region on the product pricing portion of a given label of the multiplicity of labels;

after the printing step, applying the given label to a package containing the weighed food product while the coupon portion and product pricing portion remain attached to one another, the given label applied such that the pre-printed bar code of the coupon portion faces downward against the package thereby preventing scanning of the pre-printed bar code in such orientation.

16. The method of claim 15 including the further step of providing the package, with the given label applied thereto, to a customer.

*   *   *   *   *

# Exhibit E

PTO/SB/21 (08-03)
Approved for use through 08/30/2003. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## TRANSMITTAL FORM

*(to be used for all correspondence after initial filing)*

| | |
|---|---|
| Application Number | 10/967,799 |
| Filing Date | 10/18/2004 |
| First Named Inventor | Robert J. Schuler |
| Art Unit | |
| Examiner Name | |
| Attorney Docket Number | 006593-1881-C2 |

Total Number of Pages in This Submission    6

### ENCLOSURES    *(Check all that apply)*

- [✓] Fee Transmittal Form
  - [✓] Fee Attached
- [ ] Amendment/Reply
  - [ ] After Final
  - [ ] Affidavits/declaration(s)
- [ ] Extension of Time Request
- [ ] Express Abandonment Request
- [ ] Information Disclosure Statement
- [ ] Certified Copy of Priority Document(s)
- [ ] Response to Missing Parts/ Incomplete Application
  - [ ] Response to Missing Parts under 37 CFR 1.52 or 1.53

- [ ] Drawing(s)
- [ ] Licensing-related Papers
- [✓] Petition
- [ ] Petition to Convert to a Provisional Application
- [ ] Power of Attorney, Revocation Change of Correspondence Address
- [ ] Terminal Disclaimer
- [ ] Request for Refund
- [ ] CD, Number of CDs _____

- [ ] After Allowance Communication to Technology Center (TC)
- [ ] Appeal Communication to Board of Appeals and Interferences
- [ ] Appeal Communication to TC (Appeal Notice, Brief, Reply Brief)
- [ ] Proprietary Information
- [ ] Status Letter
- [✓] Other Enclosure(s) (please Identify below):
  −Return Postcard
  −Statement of Facts

**Remarks**

The Commissioner is hereby authorized to charge any additional fees required (including the fee for any extension of time), or to credit any overpayment, to Deposit Acct No.: 20-0809.

### SIGNATURE OF APPLICANT, ATTORNEY, OR AGENT

| Firm or Individual name | Thompson Hine LLP 2000 Courthouse Plaza N.E., 10 West Second Street Dayton, Ohio 45402-1758 |
|---|---|
| Signature | |
| Date | 11/23/2004 |

### CERTIFICATE OF TRANSMISSION/MAILING

I hereby certify that this correspondence is being facsimile transmitted to the USPTO or deposited with the United States Postal Service with sufficient postage as first class mail in an envelope addressed to: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450 on the date shown below.

| Typed or printed name | Michael J. Nieberding, Registration No. 39,315 |
|---|---|
| Signature | | Date | 11/23/2004 |

This collection of information is required by 37 CFR 1.5. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

12/01/2004 RADGFD1 00000010 10967799
01 FC:1464    136.00 OP

PTO/SB/17 (10-04)
Approved for use through 07/31/2006. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# FEE TRANSMITTAL
## for FY 2005
*Effective 10/01/2004. Patent fees are subject to annual revision.*

☐ Applicant claims small entity status. See 37 CFR 1.27

| TOTAL AMOUNT OF PAYMENT | ($) 130.00 |

| Complete if Known | |
|---|---|
| Application Number | 10/967,799 |
| Filing Date | 10/18/2004 |
| First Named Inventor | Robert J. Schuller |
| Examiner Name | |
| Art Unit | |
| Attorney Docket No. | 006593-1861-C2 |

## METHOD OF PAYMENT (check all that apply)

☑ Check   ☐ Credit card   ☐ Money Order   ☐ Other   ☐ None

☑ Deposit Account:

Deposit Account Number: 20-0809

Deposit Account Name: Thompson Hine LLP

The Director is authorized to: (check all that apply)
☐ Charge fee(s) indicated below;   ☑ Credit any overpayments
☑ Charge any additional fee(s) or any underpayment of fee(s)
☐ Charge fee(s) indicated below, except for the filing fee
to the above-identified deposit account.

## FEE CALCULATION

### 1. BASIC FILING FEE

| Large Entity | | Small Entity | | | |
|---|---|---|---|---|---|
| Fee Code | Fee ($) | Fee Code | Fee ($) | Fee Description | Fee Paid |
| 1001 | 790 | 2001 | 395 | Utility filing fee | |
| 1002 | 350 | 2002 | 175 | Design filing fee | |
| 1003 | 550 | 2003 | 275 | Plant filing fee | |
| 1004 | 790 | 2004 | 395 | Reissue filing fee | |
| 1005 | 160 | 2005 | 80 | Provisional filing fee | |

| SUBTOTAL (1) | ($) 0 |

### 2. EXTRA CLAIM FEES FOR UTILITY AND REISSUE

| | Extra Claims | | Fee from below | Fee Paid |
|---|---|---|---|---|
| Total Claims | -20** = | | X 18 = | |
| Independent Claims | - 3** = | | X 88 = | |
| Multiple Dependent | | | = | |

| Large Entity | | Small Entity | | | |
|---|---|---|---|---|---|
| Fee Code | Fee ($) | Fee Code | Fee ($) | Fee Description | |
| 1202 | 18 | 2202 | 9 | Claims in excess of 20 | |
| 1201 | 88 | 2201 | 44 | Independent claims in excess of 3 | |
| 1203 | 300 | 2203 | 150 | Multiple dependent claim, if not paid | |
| 1204 | 88 | 2204 | 44 | ** Reissue independent claims over original patent | |
| 1205 | 18 | 2205 | 9 | ** Reissue claims in excess of 20 and over original patent | |

| SUBTOTAL (2) | ($) 0 |

**or number previously paid, if greater; For Reissues, see above

## FEE CALCULATION (continued)

### 3. ADDITIONAL FEES

| Large Entity | | Small Entity | | | |
|---|---|---|---|---|---|
| Fee Code | Fee ($) | Fee Code | Fee ($) | Fee Description | Fee Paid |
| 1051 | 130 | 2051 | 65 | Surcharge - late filing fee or oath | |
| 1052 | 50 | 2052 | 25 | Surcharge - late provisional filing fee or cover sheet | |
| 1053 | 130 | 1053 | 130 | Non-English specification | |
| 1812 | 2,520 | 1812 | 2,520 | For filing a request for ex parte reexamination | |
| 1804 | 920* | 1804 | 920* | Requesting publication of SIR prior to Examiner action | |
| 1805 | 1,840* | 1805 | 1,840* | Requesting publication of SIR after Examiner action | |
| 1251 | 110 | 2251 | 55 | Extension for reply within first month | |
| 1252 | 430 | 2252 | 215 | Extension for reply within second month | |
| 1253 | 980 | 2253 | 490 | Extension for reply within third month | |
| 1254 | 1,530 | 2254 | 765 | Extension for reply within fourth month | |
| 1255 | 2,080 | 2255 | 1,040 | Extension for reply within fifth month | |
| 1401 | 340 | 2401 | 170 | Notice of Appeal | |
| 1402 | 340 | 2402 | 170 | Filing a brief in support of an appeal | |
| 1403 | 300 | 2403 | 150 | Request for oral hearing | |
| 1451 | 1,510 | 1451 | 1,510 | Petition to institute a public use proceeding | |
| 1452 | 110 | 2452 | 55 | Petition to revive - unavoidable | |
| 1453 | 1,330 | 2453 | 665 | Petition to revive - unintentional | |
| 1501 | 1,370 | 2501 | 685 | Utility issue fee (or reissue) | |
| 1502 | 490 | 2502 | 245 | Design issue fee | |
| 1503 | 660 | 2503 | 330 | Plant issue fee | |
| 1460 | 130 | 1460 | 130 | Petitions to the Commissioner | 130.00 |
| 1807 | 50 | 1807 | 50 | Processing fee under 37 CFR 1.17(q) | |
| 1806 | 180 | 1806 | 180 | Submission of Information Disclosure Stmt | |
| 8021 | 40 | 8021 | 40 | Recording each patent assignment per property (times number of properties) | |
| 1809 | 790 | 2809 | 395 | Filing a submission after final rejection (37 CFR 1.129(a)) | |
| 1810 | 790 | 2810 | 395 | For each additional invention to be examined (37 CFR 1.129(b)) | |
| 1801 | 790 | 2801 | 395 | Request for Continued Examination (RCE) | |
| 1802 | 900 | 1802 | 900 | Request for expedited examination of a design application | |

Other fee (specify)

*Reduced by Basic Filing Fee Paid

| SUBTOTAL (3) | ($) 130.00 |

## SUBMITTED BY

| | | Complete (if applicable) |
|---|---|---|
| Name (Print/Type) | Michael J. Nieberding | Registration No. (Attorney/Agent) 39,316 | Telephone 937-443-6892 |
| Signature | | Date 11/23/2004 |

**WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

This collection of information is required by 37 CFR 1.17 and 1.27. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS.



IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Application of

| Applicant | : | Robert J. Schuller |
| Serial No. | : | 10/967,799 |
| Filed | : | October 18, 2004 |
| Title | : | METHOD AND SYSTEM FOR CONTROLLING MESSAGES BY AN IN-STORE LABEL PRINTER AND RELATED LABEL STRUCTURE |
| Docket | : | 006593-1881-C2 |

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

### PETITION TO MAKE SPECIAL BECAUSE OF ACTUAL INFRINGEMENT
#### (37 C.F.R. § 1.102 and M.P.E.P. § 708.02)

Applicant hereby petitions to make this application special because of actual infringement. The following Statement of Attorney and the attached Statement of Facts are offered in support of this Petition.

#### Statement Of Attorney

The undersigned attorney states as follows:

I have examined, first hand, the combination coupon and product pricing labels referred to in the accompanying Statement Of Facts. A plurality of the Labels are placed on a liner having a release surface. The plurality of labels are removably attached to the release surface of the liner and include a coupon portion, a product pricing portion, a front side and a read side. The coupon portion has a pre-printed coupon bar code located at the rear side thereof to face toward the release surface of the liner. The pre-printed coupon bar code of each label relates to a predetermined product and the front side of the coupon portion includes pre-printed information regarding the predetermined product. The front side of the product pricing portion has a pricing region for having price information printed thereon. A separation line is formed between the coupon portion and the product pricing portion. The rear side of the product pricing portion is adhesive and the rear side of the coupon portion is deadened.

Serial No. 10/967,779
Petition To Make Special
Page 2 of 2

As set forth in the accompanying Statement of Facts, the liner and the plurality of labels are formed into a roll that is inserted within a scale within a store, the scale having an associated printer. The scale is located in the deli department of the store.

As indicated in the accompanying Statement of Facts, the scale with labels inserted thereon is utilized in carrying out the following steps:

(i)      The scale is used to weigh a food product.

(ii)     Pricing information for the weighed food product is printed in the pricing region on the product pricing portion of a given label of the plurality of labels, using the printer of the scale.

(iii)    After the printing step, the given label is applied to a package containing the weighed food product while the coupon portion and product pricing portion remain attached to one another. The given label is applied such that the pre-printed coupon bar code of the coupon portion faces downward against the package and the given label is held to the package by adhesive at the rear side of the product pricing portion.

(iv)     The labeled package is then provided to a customer in the store.

I have made a rigid comparison of the use made of the labels described above to the pending claims of this application. Based upon this comparison, in my opinion, at least some of the pending claims of this application are unquestionably infringed.

I have a good knowledge of the prior art based upon my handling of priority application Serial No. 10/839,474, filed March 14, 2003 and priority application Serial No. 09/663,285, filed September 15, 2000. All material prior art has been previously made of record in this application via the IDS submitted in connection with the filing of this application.

Respectfully submitted,

Michael J. Nieberding
Reg. No. 39,316

THOMPSON HINE LLP
2000 Courthouse Plaza NE
10 West Second Street
Dayton, Ohio 45402-1758
Telephone  (937) 443-6892
Facsimile:  (937) 443-6635
510728

2



IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Application of

| | | |
|---|---|---|
| Applicant | : | Robert J. Schuller |
| Serial No. | : | 10/967,799 |
| Filed | : | October 18, 2004 |
| Title | : | METHOD AND SYSTEM FOR CONTROLLING MESSAGES BY AN IN-STORE LABEL PRINTER AND RELATED LABEL STRUCTURE |
| Docket | : | 006593-1881-C2 |

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

### STATEMENT OF FACTS IN SUPPORT OF
### PETITION TO MAKE SPECIAL BECAUSE OF ACTUAL INFRINGEMENT

I, Mark W. Croll, declare and state as follows:

I am a Vice-President of Illinois Tool Works Inc. and I am also a registered patent attorney.

On November 7, 2004, I visited the Dominick's grocery store located on Dundee Road in Northbrook, Illinois. During that visit I personally observed a scale located in the deli department of the store. The scale had a printer with a roll of labels loaded in the printer for dispensing to customers on items weighed by the deli personnel. I also spoke with a person working in the deli department and obtained a number of the labels being used in the scale. Based upon my observations at the store, my conversation with the store employee and my review of the labels I received, I hereby attest to the following facts:

(1)    The labels are placed on a liner having a release surface and the liner and labels are formed into a roll that is loaded into the scale, and the scale has a printing mechanism.

(2)    The plurality of labels are removably attached to the release surface of the liner and include a coupon portion, a product pricing portion, a front side and a rear side. The coupon portion has a pre-printed coupon bar code located at the rear side thereof to face toward the release surface of the liner. The front side of the product pricing portion has a pricing region for

Serial No. 10/967,779
Statement Of Facts
Page 2 of 2

having price information printed thereon. A separation line is formed between the coupon portion and the product pricing portion. The rear side of the product pricing portion is adhesive and the rear side of the coupon portion is deadened.

(3)     The scale is used to weigh a food product.

(4)     Pricing information for the weighed food product is printed in the pricing region on the product pricing portion of a given label of the plurality of labels, using the printer of the scale.

(5)     After the printing step, the given label is applied to a package containing the weighed food product while the coupon portion and product pricing portion remain attached to one another. The given label is applied such that the pre-printed coupon bar code of the coupon portion faces downward against the package and the given label is held to the package by adhesive at the rear side of the product pricing portion.

(6)     The labeled package is then provided to a customer in the store.


I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

_11/18/04_
Date

_Mark W. Croll_
Mark W. Croll

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Label$Dollars, Corp.,

## DEFENDANTS

Premark FEG L.L.C.,

(b) County Of Residence of First Listed Plaintiff:
(Except In U.S. Plaintiff Cases)

County Of Residence of First Listed Defendant:
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) Attorneys (Firm Name, Address, And Telephone Number)
Josy W. Ingersoll, Esquire (#1088)
John W. Shaw, Esquire (#3362)
Karen E. Keller, Esquire (#4489)
Young Conaway Stargatt & Taylor, LLP
P.O. Box 391
Wilmington, DE 19899-0391
(302) 571-6672

Attorneys (If Known)

2006 SEP 25 PM

## II. BASIS OF JURISDICTION    (PLACE AN X IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place An X In One Box For Plaintiff And One Box For Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in This State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## V. NATURE OF SUIT    (Place An X In One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury | **PERSONAL INJURY**<br>☐ 362 Personal Injury - Med Malpractice<br>☐ 365 Personal Injury - Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br><br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure of Property 21 U.S.C. 881<br>☐ 630 Liquor Laws<br>☐ 640 R R & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other | ☐ 422 Appeal 28 U.S.C. 158<br>☐ 423 Withdrawal 28 U.S.C. 157<br><br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☒ 830 Patent<br>☐ 840 Trademark | ☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce/ICC Rates, etc.<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/Exchange<br>☐ 875 Customer Challenge 12 U.S.C. 3410<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Information Act<br>☐ 900 Appeal of Fee Determination Under Equal Access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights | **PRISONER PETITIONS**<br>☐ 510 Motions to Vacate Sentence<br>Habeas Corpus<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition | **LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Railway Labor Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl Ret Inc Security Act | **SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br><br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS - Third Party 26 U.S.C. 7609 | |

## IV. ORIGIN    (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

(CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE DO NOT CITE JURISDICTIONAL STATUTSE UNLESS DIVERSITY.):
35 U.S.C. § 101 et seq.

Brief description of cause:
Cause of action for declaratory judgment of no patent infringement.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    CLASS ACTION ☐ YES ☐ NO    DEMAND $

Check YES only if demanded in complaint
JURY DEMAND: ☒ YES ☐ NO

## VIII. RELATED CASE(S) (See instructions) IF ANY

JUDGE:                    DOCKET NUMBER:

DATE  9/25/06

SIGNATURE OF ATTORNEY OF RECORD
John W Shaw

## FOR OFFICE USE ONLY

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-44

Authority For Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.    (a)    **Plaintiffs - Defendants**. Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b)    **County of Residence**. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved).

(c)    **Attorneys**. Enter firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)."

II.    **Jurisdiction**. The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction is based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

III.    **Residence (citizenship) of Principal Parties**. This section of the JS-44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.    **Cause of Action**. Report the civil statute directly related to the cause of action and give a brief description of the cause.

V.    **Nature of Suit**. Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section IV above, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

VI.    **Origin**. Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C. Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate's decision.

VII.    **Requested in Complaint**. Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.    **Related Cases**. This section of the JS-44 is used to reference relating pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature**. Date and sign the civil cover sheet.

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. _____ 0 6 - 5 9 4 _____

# ACKNOWLEDGMENT
# OF RECEIPT FOR AO FORM 85

## *NOTICE OF AVAILABILITY OF A*
## *UNITED STATES MAGISTRATE JUDGE*
## *TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF _____ COPIES OF AO FORM 85.

_9/25/06_
(Date forms issued)

_____
(Signature of Party or their Representative)

_____
(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action